PER CURIAM.
|, The state filed a petition to adjudicate defendant delinquent based on a violation of La.R.S. 14:95.8, illegal possession of a handgun by a juvenile. The Juvenile Court for Orleans Parish adjudicated defendant delinquent as charged and committed him to the custody of the Office of Juvenile Justice for not more than six months. On appeal, in a split panel decision, the Fourth Circuit reversed on grounds that the state’s evidence did not satisfy the requisite statutory definition of a handgun for purposes of R.S. 14:95.8, and thus, failed to carry the state’s burden of proving beyond reasonable doubt defendant’s illegal possession of a handgun. The court of appeal vacated the adjudication and thereby pretermitted defendant’s second assignment of error challenging the juvenile court’s summary disposition order. *293 State in the Interest of T.E., 11-1172 (La.App. 4th Cir. 2/23/12), 85 So.3d 270. We granted the state’s application to review the decision below and reverse for reasons that follow.
As detailed by the evidence presented at the adjudication hearing, on April 24, 2011, New Orleans Police Officer Sean Ogden, working a detail in the Fischer Housing Development, monitored security cameras providing wide-angle views inside the housing development. Ogden described the cameras as a sophisticated ^surveillance system which allowed him to “zoom in on a license plate from maybe a block or two blocks away and actually be able to read their license plate.” The officer observed defendant, whom he knew from seeing him “all the time” in the project, sitting in the rear passenger seat of a car parked in the 2000 block of Hendee Street. Ogden then watched as defendant got out of the car holding what the officer believed was a handgun in his right hand. Ogden testified that although he could not tell make or model, “[i]t looked like a semiautomatic hand gun he was possessing in his right hand.” Defendant then tucked the object into the waistband of his pants, tightened his belt to hold it in place, pulled his shirt over it, and walked away. Ogden alerted two other security officers and they proceeded in a marked patrol unit to the area, where they spotted defendant in front of a residence on Hendee Street. The officer testified that “[wjhen [defendant] saw us pull up when we got out of the car the doors started opening up that’s when he fled on foot.” Defendant eluded the officers but found himself placed under arrest by Officer Ogden several days later.
Officer Ogden testified that he had been a police officer since 2002 and was therefore familiar with firearms. He was also familiar with the behavior of individuals who possess firearms and seek to conceal them from the police. “Like I said,” the officer told the court, “I’ve been on the force for a while and anyone that I’ve ever chased who I later found to be in possession of a firearm they ran from me initially. They knew to run from me because they knew they were in possession of an illegal weapon.” In the officer’s opinion, that pattern was “consistent with [defendant’s] behavior.”
Ogden was the only state witness to appear at the hearing but in connection with his testimony, the state introduced into evidence, and played for the court, a copy of the surveillance video showing defendant’s conduct immediately after he Lgot out of the vehicle parked on Hendee Street. Defendant did not testify but the defense called an investigator who stated that she and defense counsel had purchased a BB gun over the weekend before the hearing. Counsel introduced the gun as an exhibit to underscore for the court that what defendant had in his hand did not necessarily fall within the statutory definition of a handgun in La.R.S. 14:95.8, derived from La.R.S. 14:37.2(B), ie., “an instrument used in the propulsion of shot, shell, or bullets by the action of gunpowder exploded within it.”[1] Counsel argued that for all Officer Ogden knew, defendant held in his hand a BB gun, such as the one introduced as an exhibit at the hearing, designed to look like a semi automatic handgun but which propelled its shot by compressed air, not gunpowder.
*294 However, the court had viewed the surveillance video and concluded that “[i]n actuality the [BB] gun and the handgun really did not look similar in my estimation of it at all.” The court noted that it was “quite clear from the video” defendant had had a firearm in his hand, not only from its appearance, but also from how defendant behaved with it, first concealing the object in his waistband with his shirt after tightening his belt to secure it, and then running as soon as the officers appeared on the scene.
On appeal, a majority on the Fourth Circuit panel emphasized Officer Ogden’s testimony under cross-examination that he did not actually zoom in on the object in defendant’s hand with his camera and therefore could not tell the make or model of what he believed was a handgun. Given that “[n]o other evidence was introduced to establish that the object was a handgun, and notably, no handgun was Lever actually recovered from T.E.,” the majority applied a civil standard of review derived from this Court’s decision in State in Interest of Batiste, 367 So.2d 784, 788 (La.1979) (“Juvenile delinquency proceedings do not fall within the category of criminal prosecutions, as is evident from long established jurisprudence.... the scope of review of this Court in juvenile delinquency proceedings extends to both law and the facts.”) (citations omitted), and concluded “that the officer’s testimony regarding his observations of T.E.’s mannerisms in the surveillance video while holding the object does not meet th[e] statutory definition of a handgun [provided by La.R.S. 14:37.2(B) ].” State in the Interest of T.E., 11-1172 at 4, 85 So.3d at 272. Dissenting, Chief Judge Jones observed that the majority had pronounced a new rule, for which he could find no authority and in which he could not concur, that the juvenile court “was required to determine both the make and model of the weapon before the court could determine that he juvenile in fact possessed a weapon.” T.E., 11-1172 at 1, 85 So.3d at 273 (Jones, C.J., dissenting).
We agree with Judge Jones that the majority erred in vacating defendant’s delinquency adjudication although the state generally risks an adverse decision when it fails to meet a factfinder’s expectation of what it ought to prove in a given case. See Old Chief v. United States, 519 U.S. 172, 188, 117 S.Ct. 644, 654, 136 L.Ed.2d 574 (1997) (“[Bjeyond the power of conventional evidence to support allegations and give life to the moral underpinnings of law’s claims, there lies the need for evidence in all its particularity to satisfy the jurors’ expectations about what proper proof should be.... for example, that a charge of using a firearm to commit an offense will be proven by introducing a gun into evidence.... If [those] expectations are not satisfied, triers of fact may penalize the party who disappoints them by drawing a negative inference against that party.”) (internal quotation marks and citation omitted).
15However, in the present case, the state disappointed the expectations not of the trial court but of the court of appeal which held against it the failure of Officer Ogden and his fellow officers to run defendant down when he fled and recover the gun. Under the circumstances, the court of appeal overstepped its bounds by drawing a negative inference against the state that the trial court considered and reasonably rejected as a basis for acquitting defendant because it lost sight of a settled rule applicable on review in both civil and criminal cases that an appellate court ordinarily may not substitute its appreciation of the evidence at trial for that of the factfinder. See, e.g., State v. Calloway, 07-2306, p. 10 (La.1/21/09), 1 So.3d 417, *295 422 (“[The] due process, rational fact finder test of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), does not permit a reviewing court to substitute its own appreciation of the evidence for that of the fact finder or to second guess the credibility determinations of the fact finder necessary to render an honest verdict.”); Rosell v. ESCO, 549 So.2d 840, 844 (La.1989) (“[I]f the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.”).
The juvenile court had the benefit of viewing a copy of the surveillance video observed by Officer Ogden and could judge for itself whether defendant possessed a handgun. The court had also personally viewed the BB gun introduced by the defense as an exhibit and could compare it to the object depicted in the video to assess for itself whether it created a reasonable doubt with respect to what defendant held in his hand. See, e.g., State v. Stewart, 00-2960, p. 7 (La.3/15/02), 815 So.2d 14, 17 (“Jurors viewed the videotape [of defendant’s encounter with the undercover police officers] and could draw their own conclusions about the nature of the ‘trash talking' which accompanied the initial meeting of defendant and [the IfiOfficer].”) (citing 4 J. Wigmore, Evidence, § 1157 (Chadborne rev.1972) (discussing autoptic proference, or things proved by the self-perception of the tribunal)). Finally, on the basis of what the video depicted, the court could determine for itself whether to draw a negative inference from defendant’s conduct with the object in his hand, tucking it in his waistband and securing it, then concealing it under his shirt, and running with it at the first sight of the officers arriving on the scene. See State v. Davies, 350 So.2d 586, 588 (La.1977) (“Evidence of flight, concealment, and attempt to avoid apprehension is relevant. It indicates consciousness of guilt and, therefore, is one of the circumstances from which the jury may infer guilt.”); cf. State v. Harris, 02-1589, p. 6 (La.5/20/03), 846 So.2d 709, 713-14 (state’s inadvertent failure to introduce report of chemical analysis did not require reversal of defendant’s conviction for attempted possession of cocaine: “Identification of a controlled substance does not require direct evidence if available circumstantial evidence establishes its identity beyond a reasonable doubt.... Identification based upon familiarity through law enforcement coupled with present observation of the substance at hand will suffice to establish the illicit nature of a suspected substance.”).
Given the identification made by an experienced police officer familiar with firearms, of an object made present to the court through the surveillance video for its own inspection, coupled with the circumstantial inferences arising from defendant’s concealment of, and flight with, the object, the juvenile court adjudication of delinquency based on a violation of La.R.S. 14:95.8 was not clearly or manifestly erroneous, and one that any rational trier of fact could make, and the court of appeal erred in concluding otherwise. Cf. State v. Captville, 448 So.2d 676, 680 (La.1984) (“When a case involves circumstantial evidence, and the jury reasonably rejects |7the hypothesis of innocence presented by the defendant ], that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt.”).
The decision below is reversed and this case is remanded to the court of appeal to consider defendant’s remaining assignment of error pretermitted on original appeal.

. La. R.S. 14:95.8(A) provides that "[i]t is unlawful for any person who has not attained the age of seventeen years knowingly to possess any handgun on his person.” Subsection (D) of the statute further provides that "[f]or purposes of this Section[,] ‘handgun’ means a firearm as defined in R.S. 14:37.2, provided however, that the barrel length shall not exceed twelve inches.”