PAUL A. BONIN, Judge.
1,A jury found Mazen Hamdan guilty of possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1. He appeals his conviction.[1] He argues that the evidence supporting the prosecution’s assertion that he possessed a firearm is insufficient to sustain its burden on that essential element of the offense. He also argues that his right to confront and cross-examine one of his accusers, a police officer who had testified at the preliminary hearing but who was not called as a prosecution witness at the trial itself, was violated. And he finally argues that his rights under the Due Process Clause were violat *200 ed when the trial judge admitted at trial evidence of out-of-court identifications which had previously been suppressed.
We have reviewed his insufficiency of evidence claim under the well-known Jackson v. Virginia standard, which requires us to consider all the evidence considered by the jury, whether or not that evidence was properly admitted at trial. 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under that standard, we are satisfied that a rational trier of fact, considering all of the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that the defendant possessed a firearm as prohibited by the statute, as well as all the other essential elements of the offense. With respect to Mr. Hamdaris claim that his right to confront and cross-examine a non-testifying police officer was violated, we find as a matter of law that there is no constitutional violation. And finally, with respect to the trial judge’s admission of the evidence of the suppressed out-of-court identification, we agree with Mr. Hamdan that such constitutes error, but disagree that such error is, under these circumstances, reversible error.
We, therefore, affirm Mr. Hamdaris conviction as a convicted felon in possession of a firearm.[2] We explain our holding in greater detail below.
I
We begin our explanation with a brief review of the evidence followed by a discussion of the applicable standard of review. We conclude with an analysis of the evidence under that standard.
At the outset, however, we highlight that Mr. Hamdan’s complaint is that the prosecution failed to prove that the firearm, which he is alleged to have possessed, satisfied the statutory requirement that it was a pistol or revolver that is “designed to fire or is capable of firing fixed cartridge ammunition or from which a shot or projectile is discharged by an explosive.” La. R.S. 14:95.1 D. Because the firearm Uhe allegedly possessed was not “fired” during Mr. Hamdaris confrontation with the Kellers, and it was never recovered during the investigation, Mr. Hamdan asserts that the prosecution necessarily failed in its burden of proof on this essential element.
A
Richard Keller testified that he and his wife were stopped at a red traffic signal at North Claiborne and Desire Streets in New Orleans on July 29, 2010, when they observed someone running up and down the street looking irate. At first he and his wife did not pay attention to the individual. When the light changed to green, he proceeded forward, and Mr. Hamdan stepped off the sidewalk screaming, hollering and acting irate. Mr. Keller said that Mr. Hamdan then reached down into his pants and pulled out a chrome gun after he blew his car’s horn at the defendant. After pulling the gun out, Mr. Hamdan asked Mr. Keller: ‘What the ‘f-’ are you going to do now?”
Mr. Keller moved his car to the left, and Mr. Hamdan then feinted to the left. Mr. Keller said that he then drove around the defendant. He said that from the time Mr. Hamdan pulled the gun until the time he drove away took less than fifteen seconds. Mr. Keller then drove to the next corner. Mrs. Keller called 911, but the operator hung up on her. Mr. Keller then called 911, and spoke with an operator. Mr. Keller told the 911 operator that a *201 male on the corner of Desire and North Claiborne pointed a chrome-looking gun at them and cursed them out for no reason. At trial, Mr. Keller identified a recording of a 911 call as the one he had Rplaced on that date. The 911 operator told the Kel-lers to wait at the scene. After waiting for ten to fifteen minutes, the Kellers left the scene and drove to a nearby police station.
Mr. Keller also testified as to the circumstances of his out-of-court identification of Mr. Hamdan on the night in question. He said that when they were at the police station, an officer asked them to step outside because the police had “the young man” inside the car. Mr. Keller said he looked down and identified him. He said there was no doubt in his mind that the individual in the police car was the person. In court during the trial, Mr. Keller again identified Mr. Hamdan, the defendant, as the person that he had described to both the 911 operator and to the police outside the police station on the night of the confrontation.
Mr. Keller described the gun as a large chrome gun, but he did not notice whether it was a revolver or a semiautomatic. Asked if he could say whether the gun was real or not, Mr. Keller replied: “I don’t know.” But he went on to tellingly testify: “It was real enough to make me move.”
Clarissa Keller corroborated the details of her husband’s testimony in all respects. She too identified Mr. Hamdan as he sat in a police car as the individual who had pointed the gun earlier that evening. Mrs. Keller also identified Mr. Hamdan in court, saying that she had no doubt that she had the right person.
Mrs. Keller described the gun as a long, shiny, chrome gun. She did not know whether it was a revolver or a semiautomatic. She said the gun looked real |6to her. When quizzed by defense counsel as to whether she could tell him whether the gun was real or not, Mrs. Keller rejoined: “I didn’t get out the truck, sir.”
Officer Brittany Marigny, an officer with the New Orleans Police Department, responded to the call at Desire Street and North Claiborne Avenue on July 29, 2010, and arrested Mr. Hamdan at that time. She said defendant approached her police unit and said he had an altercation with some people and they drove off. Mr. Hamdan reported that the people had parked in front of his residence, and he had told them to “get the ‘F’ out of there, or something like that ...”
Officer Marigny requested that the dispatcher locate the Kellers and ask them to return to the scene, but she was advised that they were at the Fifth District police station. After speaking with Mr. Hamdan, she Mimndized him and transported him to the police station, where he was identified by the Kellers, each one viewing him separately.
Officer Marigny testified that Mr. Ham-dan did not have any weapons on his person. She likewise stated that the police did not recover any weapons. Because she did not recover a weapon, Officer Marigny could not say whether the weapon Mr. Hamdan was alleged to have had was real. She did not enter his home, and to her knowledge none of the other officers who had responded with her did either. Officer Marigny charged Mr. Hamdan with aggravated assault under the name of Ba-zel Hamdan, which is the name with which he identified himself, and he was booked under that name. Subsequent fingerprinting of Mr. Hamdan resulted in his | ^correct identification as Mazen Hamdan, who was on supervised probation for a conviction for possession of methadone.[3]
*202 The jury heard additional evidence that a telephone call was made from the Orleans Parish Prison, where Mr. Hamdan was detained while awaiting trial. The call was placed on July 30, 2010, the day after the incident, and attributed to Mr. Ham-dan’s “folder”, ie., personal identification, number. The automated greeting says: “Hello, this is a free call from [whereupon the caller says what sounds like the first name defendant was booked under, ‘Ba-zel’], an inmate at the Orleans Parish Prison.” The recipient politely asks the inmate what happened. The inmate says he does not know, and the recipient gets angry. The following conversation was recorded:
Inmate: “Somebody seen me put the gun in my pocket.”
Recipient: “Where’s the gun at?”
Inmate: “Uh, what’s his name, I told him to hide it.”
Recipient: “Who?”
Inmate: “What’s his name?”
Recipient: “David?”
Inmate: “Yeah.”
Recipient: “It’s gone if you gave it to David ... You waive the f-gun on people!”
Inmate: “I ain’t waive it at nobody.”
17Recipient: “The f-people called. You got an aggravated assault on someone. Two people ...”
Inmate: “All I did was pulling [sic] it in my pants. It was falling out my pants ... I ain’t point it at nobody or nothing
Recipient: You didn’t show nobody the gun, huh?”
Inmate: “No, man. The f-s — . I was in front [sic] Desire, you know, that s — was falling outta my pants.”
Recipient: “Now I gotta call the f-cops, and go get my gun from David, right?”
Inmate: “David got it?”
Recipient: “David sold it, you fool, he sold it. He sold it ...”
Inmate: “He put it in the house.”
Recipient: “It’s gone you fool. He sold it for crack. He thinks it’s a hot gun. He don’t know if it’s my f-gun, [sic] got papers on it. Now I gotta call the cops, bring ’em over there, and get my gun back. And he’s gonna go to jail.”
Inmate: “Baz, you can’t do that.”
Recipient: “How I’m a [sic] get my gun back?!”
Inmate: “I don’t know right now ... Get me out first.”
Recipient: “Get you out! How?! You’re under my name, you fool!”
Inmate: “Yeah, but this is nothing, this charge.”
|8Recipient: “How?! They’re gonna find out. I’m not gonna have no f-assault on my record, you fool!”
Inmate: “You didn’t do nothing, you fool.”
Recipient: “Well, you shouldn’t have used my name. Why would you use my name?!”
Inmate: “Whatta you gonna to do?”
Recipient: “I don’t know. Nothing. I don’t know what the f-to do. I ain’t got no f-money. I’ll tell you that now. Don’t have no money. Then you want to use my name, to top everything off. Then my gun’s missing. Then you say wait ’til you get out to get my gun. I’m a [sic] have to bring the cops over by David right now.”
Inmate: “Yeah, but if you tell ’em your name and s — .”
*203 Recipient: “Huh?”
At that point the timed jailhouse call automatically terminated.
B
In order to convict a person of violating La. R.S. 14:95.1, the prosecution must prove beyond a reasonable doubt that the defendant: (1) possessed the firearm; (2) had a prior conviction for an enumerated felony; (3) possessed the firearm within ten years of the prior conviction; and (4) had the general intent to commit the offense.[4] State v. Ussin, 08-1577, p. 2 (La.App. 4 Cir. 4/8/09), 10 So.3d 848, 849; State v. Clements, 12-1132, p. 5 (La.App. 4 Cir. 3/13/13), 112 So.3d 306, 310-311, citing State v. Husband, 437 So.2d 269, 271 (La.1983).
Under the well-known Jackson v. Virginia standard of review, there are tried and true principles of review. First, we consider all of the evidence that the jury considered. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Thus, in reviewing for sufficiency of evidence, we do not ignore evidence which was erroneously admitted at the trial or evidence which could have been excluded as, for example, inadmissible hearsay.[5] See State v. Hearold, 603 So.2d 731, 734 (La.1992).
And, second, all of the evidence is viewed in the light most favorable to the prosecution. See State v. Fields, 12-0674, p. 6 (La.App. 4 Cir. 6/19/13), 120 So.3d 309, 315. Thus, in evaluating sufficiency of the evidence, we are not merely limited to the evidence itself, but may consider all reasonable inferences from the evidence which the fact-finder could have made. Jackson, 443 U.S. at 319, 99 S.Ct. 2781.
In similar fashion, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according 11flto reason and common experience. See State v. Shapiro, 431 So.2d 372, 378 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438.
And, third, in evaluating a defendant’s challenge to the sufficiency of evidence, we are restricted to those theories of defense actually put forward to the trier of fact. See State v. Juluke, 98-0341, pp. 4-5 (La.1/8/99), 725 So.2d 1291, 1293-1294 (per curiam). In other words, a defendant may not develop a new theory on appeal and demonstrate that the circumstantial evidence was insufficient to negate the new theory. Id.
*204 And, fourth, in our review, we are highly deferential to the trier of fact. State v. Smith, 11-664, p. 4 (La.App. 4 Cir. 1/30/13), 108 So.3d 376, 381. Thus, we assume that the jury can accept as true the testimony alone of any witness, even a single witness. State v. Sanchell, 11-1672, p. 6 (La.App. 4 Cir. 10/31/12), 103 So.3d 677, 680. We will only tread on a jury’s presumed acceptance of a witness’ testimony when the testimony is implausible or clearly contrary to documentary evidence. See State v. Mussall, 523 So.2d 1305 (La.1988).
C
By applying these principles of review for sufficiency of evidence, we find that a rational trier of fact could find beyond a reasonable doubt that the gun possessed by Mr. Hamdan was a firearm which was “designed to fire or is capable of firing fixed cartridge ammunition or from which a shot or projectile is discharged by an explosive” as required by La. R.S. 14:95.1 D.
lnClearly, Mr. Hamdan used the gun to threaten and frighten the Kellers. He did not use it as if it was a toy or imitation gun. The Kellers’ natural reaction to the gun and the manner in which Mr. Hamdan was using it was one of fright such that they contacted the police about the danger. The chrome gun looked real enough that the Kellers were not going to get out of their car in order to be certain that the gun was “real.” The jury could determine for itself whether to draw a negative inference from defendant’s conduct with the object in his hand. See State in the Interest of T.E., 12-0517, p. 6 (La.6/29/12), 91 So.3d 292, 295 (where object in video appeared to be a handgun but the object was never recovered).
In light of the circumstances that Mr. Hamdan, a convicted felon, gave the gun to a drug addict to dispose of, and then, upon arrest, gave the name Bazel Hamdan, who was the registered owner of the gun, a rational trier of fact could surely find beyond a reasonable doubt that the gun was a firearm within the statute’s prohibition. Common sense and ordinary experience would suggest to a rational trier of fact that owners do not register their toy guns or their fake guns.
Moreover, based upon the telephone conversation between Bazel Hamdan and the defendant, Mr. Hamdan’s argument that the gun was a toy or an imitation is implausible. It is not plausible that Bazel Hamdan would tell the defendant that he would expose the defendant’s true identity and turn in the drug addict, David, if his “gun” was only a toy or an imitation of a gun and not a gun capable of being fired. Thus, viewing the content and nature of the recorded jailhouse conversation between defendant and the real Bazel, as well as all the other evidence, in a light 112most favorable to the prosecution, it would be irrational to conclude that the “gun” the two men were referring to — the “gun” admittedly in defendant’s possession at the time of the incident in question— was anything other than a pistol, revolver, or black powder weapon designed to fire or capable of firing fixed cartridge ammunition or from which a shot or projectile is discharged by an explosive, as defined by La. R.S. 14:95.1 D.
Viewing all the evidence in a light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that defendant possessed a firearm after having been previously convicted of a felony.
Before we turn to consider Mr. Ham-dan’s other assignments of error, we acknowledge that Mr. Hamdan in his pro se brief argues that his conviction cannot stand on his uncorroborated inculpatory *205 statements alone. We will not linger on this point and simply note that there is considerably more evidence to support his conviction, both circumstantial and direct, than only Mr. Hamdan’s statements made to the investigating police officer and in the telephone conversation.[6]
II
Mr. Hamdan in his pro se brief also claims that his constitutional right under the Sixth Amendment[7] has been violated because the prosecution failed to call as aj^witness at the trial a police officer, David Desalvo, who testified at the preliminary hearing. Notably, no part of Officer Desalvo’s preliminary hearing testimony was introduced at Mr. Hamdan’s trial nor does he claim that hearsay statements of Officer Desalvo were repeated by another witness at the trial.
Instead, Mr. Hamdan seems to argue that Officer Desalvo’s preliminary hearing testimony differed in some particulars with Officer Marigny’s trial testimony. He points out that while Officer Desalvo testified that he futilely searched Mr. Ham-dan’s house looking for the gun, Officer Marigny testified at trial that neither she nor any other officer, to her knowledge, searched the defendant’s residence. He also points out that the officers’ respective testimonies differ with regard to who authored the police report and who escorted the Kellers from inside the police station to identify Mr. Hamdan in the back of the police car.
And, Mr. Hamdan seems to further argue that he did not have the opportunity to bring out such contradictions — as he describes them — before the jury because of the absence of Officer Desalvo from the trial. Of course, nothing precluded Mr. Hamdan from exercising his Sixth Amendment right to compel the testimony of Officer Desalvo, and thereby impeach Officer Marigny’s testimony, if Mr. Hamdan believed that Officer Marigny was testifying untruthfully on these points. But, for whatever reason, Mr. Hamdan chose not to compel Officer Desalvo’s trial testimony.[8] On the other hand, if Mr. Hamdan instead believed that it was Officer Desalvo’s preliminary hearing testimony which was untruthful, there 114could be no constitutional violation whatsoever in the prosecutor not calling him as a witness at trial. Cf. Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); State v. Broadway, 96-2659, p. 17 (La.10/19/99), 753 So.2d 801, 814; State v. Williams, 338 So.2d 672, 677 (La.1976); State v. Everett, 11-0714, p. 46 (La.App. 4 Cir. 6/13/12), 96 So.3d 605, 636, writs denied, 12-1593, 12-1610 (La.2/8/13), 108 So.3d 77.
Consequently, we cannot discern how there could be Sixth Amendment violation of the confrontation and cross-examination protections where Officer Desalvo did not testify during the trial, the prosecution did *206 not seek to use his prior preliminary hearing testimony during the trial, and no hearsay statement by Officer Desalvo as the declarant was introduced during the trial. Simply stated, Officer Desalvo was not a witness “against” Mr. Hamdan. See Maryland v. Craig, 497 U.S. 836, 845, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990) (“The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact.”); California v. Green, 399 U.S. 149, 158, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) (the right guaranteed by the Confrontation Clause “permits the jury that is to decide the defendant’s fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility”).
Ill
We now turn to consider Mr. Hamdan’s final argument that the trial judge erroneously admitted the evidence of the Kellers’ previously suppressed out-of-_Jcourt15 identifications of Mr. Hamdan. During the trial Mr. Hamdan objected to the admission of the suppressed evidence and called the trial judge’s attention to his earlier ruling. The trial judge reviewed the minute entry which recorded that the motion to suppress the identification had been denied. Relying on the accuracy of the minute entry, the trial judge allowed the prosecution to introduce the evidence.
The transcript of the suppression hearing, however, clearly records the trial judge as granting the motion: “I’m going to suppress the I.D.” In cases where there is a discrepancy between a minute entry and the transcript, the transcript prevails. See State v. Randall, 10-1027, p. 3 (La.App. 4 Cir. 6/22/11), 69 So.3d 683, 685; State v. Wells, 10-1338, p. 9 (La.App. 4 Cir. 3/30/11), 64 So.3d 303, 306.
“A ruling prior to the trial on the merits, upon a motion to suppress, is binding at the trial.” La.C.Cr.P. art. 703 F (emphasis added). Thus, the trial judge committed error in allowing the evidence.
But we must nevertheless determine whether this error requires reversal or whether we are convinced beyond a reasonable doubt that the error did not contribute to the jury’s verdict. We are without authority to reverse a ruling “which does not affect substantial rights of the accused.” La.C.Cr.P. art. 921. But “[w]e have both the power and the obligation to review the record de novo to determine an error’s harmlessness.” State v. Smith, 600 So.2d 1319, 1326 (La.1992), citing to Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and Arizona v. Fulminante, 499 U.S. 279, 295, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (Emphasis in original). The question becomes whether we can declare beyond a reasonable doubt that the erroneous ruling did not contribute to the jury’s finding of guilt or whether the error is unimportant in relation to everything else the jury considered, as revealed in the record. See State v. Welcome, 458 So.2d 1235, 1244 (La.1983). Stated differently, the appropriate standard for determining harmless error is whether the guilty verdict was surely unattributable to the trial court’s error. See Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).
In reviewing the record, however, we do not make credibility determinations or findings of fact; we are limited to determining whether the state has met its burden of demonstrating that the erroneous ruling did not contribute to the defendant’s conviction. See State v. Ellis, 94-599, p. 25 (La.App. 5 Cir. 5/30/95), 657 So.2d 341, *207 357. Importantly, we emphasize that the burden of establishing harmlessness is in this case upon the prosecution and not upon the defendant. See State v. Lewis, 12-1175, pp. 15-16 (La.4/4/12), 96 So.3d 1165, 1176 (Bonin, J., dissenting and citing to Chapman v. California, 386 U.S. 18 at 24, 87 S.Ct. 824, which held that the burden is upon the beneficiary of the error), rev’d, 12-1021 (La.3/19/13), 112 So.3d 796.
After examining the record, we can declare beyond a reasonable doubt that the jury’s verdict was surely unattributable to the erroneous ruling. Mr. Hamdan denied possession of a firearm. He admitted to the police, however, that he was the individual involved in the encounter with the Kellers near his home on Desire Street. His admission occurred before the Kellers’ suppressed out-of-court | ^identification. Moreover, the defendant self-identified in the telephone conversation with Bazel Hamdan, and by falsely identifying himself as Bazel Hamdan at the time of his arrest. The Kellers, moreover, positively identified Mr. Hamdan during the trial. There simply was no question that Mr. Hamdan was the individual involved.
Because the evidence of the Kellers’ out-of-court identifications of Mr. Hamdan was cumulative with respect to the establishment of his identity, yet inconsequential insofar as his identity was hardly an issue at trial, we find beyond a reasonable doubt that the jury’s verdict was surely unattributable to the erroneous ruling. We will not reverse Mr. Hamdan’s conviction on account of a harmless error.
DECREE
The conviction of Mazen Hamdan for violating La. R.S. 14:95.1 is affirmed.
CONVICTION AFFIRMED.

. Mr. Hamdan has filed a separate appeal of the sentence imposed upon him as a habitual felony offender following the Louisiana Supreme Court decision in his case which reversed both the trial judge and this Court’s holding that a prior federal conviction could not serve as a predicate offense under La. R.S. 15:529.1. See State v. Hamdan, 12-1986 (La.3/19/13), 112 So.3d 812. On that account, we pretermit consideration of the errors patent we identified with respect to the sentence imposed prior to the remand from the Supreme Court.

. We have, as we always do, examined the record for errors patent and have detected none which pertain to his conviction. See La.C.Cr.P. art. 920(2).

. Mr. Hamdan does not challenge the sufficiency of the proof of his predicate convic *202 tions.

. As we have indicated, Mr. Hamdan challenges the sufficiency of the evidence only with respect to the "firearm” element.

. We note that defense counsel made no hearsay objection concerning the jailhouse telephone call(s). See State v. Allen, 03-2418, p. 25 (La.6/29/05), 913 So.2d 788, 807 ("In the ordinary case, hearsay evidence not objected to constitutes substantive evidence.”); see also State v. Dabney, 02-0934, p. 6 (La.4/9/03), 842 So.2d 326, 330 (where the defense did not object on hearsay grounds to testimony of police officer regarding his conversation with the defendant’s girlfriend, the police officer’s account of the girlfriend’s statements on the night of the defendant’s arrest “became substantive evidence for the jury to consider”). But even if there had been a timely objection, we would still consider the inadmissible evidence on a sufficiency of evidence review. We likewise analyze the defendant’s complaint regarding the authenticity of the telephone conversations. A defect in the chain of custody goes to the weight of the evidence rather than its admissibility. See State v. McElveen, 10-0172, p. 91 (La.App. 4 Cir. 9/28/11), 73 So.3d 1033, 1089; State v. Ferguson, 09-1422, p. 33 (La.App. 4 Cir. 12/15/10), 54 So.3d 152, 170.

. See State v. Martin, 93-0285, p. 7 (La.10/17/94), 645 So.2d 190, 195, for a discussion of the "corpus delicti rule” which Mr. Hamdan references in his pro se brief.

. The Sixth Amendment to the U.S. Constitution states:
In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

. Mr. Hamdan also did not seek at the trial to demonstrate Officer Desalvo's unavailability as a witness and introduce his testimony at the preliminary hearing. See La. C.E. art. 804.