ROSEMARY LEDET, Judge.
I,This is a criminal appeal. The defendant, Eugene Watson, seeks reversal of his conviction for illegal possession of a stolen firearm, pursuant to La. R.S. 14:69.1, and possession of a firearm by a convicted felon, pursuant to La. R.S. 14:95.1. Mr. Watson contends that the evidence was insufficient to uphold his conviction and that the district court erred in failing to rule on his pro se motion to quash the bill of information. For the reasons that follow, we affirm.

STATEMENT OF THE CASE

On August B, 2012, Mr. Watson was charged by bill of information with one count of illegal possession of a stolen firearm and one count of possession of a firearm by a convicted felon. On September 6, 2012, Mr. Watson pled not guilty to both counts. On January 4, 2018, the district court denied Mr. Watson’s motion to suppress the evidence and found probable cause to hold Mr. Watson on his bond obligation.
After several continuances, a jury trial was held on May 15, 2013. The jury found Mr. Watson guilty on both counts. On June 6, 2013, the State filed a multiple bill of information. On July 31, 2013, Mr. Watson was sentenced as a first offender to serve five years at | ¡.hard labor as to La. R.S. 14:69.1, and twelve years at hard labor as to La. R.S. 14:95.1. On the same date, Mr. Watson entered a guilty plea as a second offender to a multiple bill of information. The district court immediately vacated Mr. Watson’s original sentence and resentenced him as a multiple offender to serve ten years at hard labor as to La. R.S. 14:69.1 and twelve years at hard labor as to La. R.S. 14:95.1, with credit for time served, to run concurrently, and without benefit of probation, parole, or suspension of sentence. This appeal followed.

STATEMENT OF THE FACTS

At trial, Detective Leonard Standiford testified that on July 9, 2012, he and Detective Nicholas Ory were patrolling the area around S. Liberty and St. Andrew Streets because of recent shootings and complaints of narcotic activity.[1] Detective Standiford testified that at approximately 5:45 p.m. he was driving when he observed Mr. Watson crouching underneath a house on the corner of S. Liberty Street and St. Andrew Street.[2] As he stopped his patrol car, he witnessed Mr. Watson reach to the left side of his waistband underneath his shirt, remove a firearm, and toss the firearm underneath the house. When the detectives exited the vehicle and ordered Mr. Watson to show them his hands, Mr. Wat *1171 son proceeded under the house to the back stairs and attempted to enter the house. Detective Standiford testified that the distance from where Mr. Watson was crouched down to the back stairs was approximately fifteen feet. The detectives quickly apprehended Mr. Watson on the back stairs, and Detective Ory handcuffed him. 1 sDetective Standiford then took control of Mr. Watson as Detective Ory went to retrieve the firearm from under the house.
Detective Ory’s testimony in most respects tracked that of Detective Standi-ford. He testified that on the date of the offense he was riding with Detective Stan-diford on proactive patrol in the area due to recent violent offenses. When Detective Standiford turned onto St. Andrew Street from S. Liberty Street, Detective Ory saw Mr. Watson crouched down under a house that was raised off the ground about three to four feet. He explained that the house was raised off of the ground by cement blocks. When Mr. Watson saw the detectives, he looked nervous, reached under his shirt with his left hand on his pocket, raised his shirt, pulled out' a black weapon, threw it to the ground, and attempted to flee. Detective Ory apprehended Mr. Watson as he fled up the back stairs of the house, placed him in handcuffs, and went to retrieve the weapon. Meanwhile, Detective Standiford read Mr. Watson his rights. Detective Ory immediately recognized the weapon as a New Orleans Police Department (“NOPD”) firearm with an extended magazine. He rendered the weapon safe by removing the magazine and by racking the slide to remove a live round of ammunition.
Both Detectives Standiford and Ory identified the NOPD Glock that Mr. Watson discarded and the extended magazine from the weapon. Both detectives testified that they were familiar with Mr. Watson before they arrested him. On cross-examination, both detectives were asked whether another individual was with Mr. Watson at the time he was apprehended; both detectives testified that they only saw Mr. Watson. Further, both detectives testified that at the time they apprehended Mr. Watson, there was no vehicular traffic in the street.
14Petective Standiford identified a photograph taken immediately after they apprehended Mr. Watson of footprints underneath the house that were consistent with the Adidas shoes that Mr. Watson was wearing when he was apprehended. On cross-examination, Detective Standiford testified that he did not measure the footprints. Detective Standiford also made an in-court identification of Mr. Watson.
The NOPD Glock that Mr. Watson discarded belonged to Sergeant Dowal Barrett. Sergeant Barrett testified that on June 22, 2012, his home was burglarized and among his personal items that were stolen was his NOPD Glock. He explained that all NOPD weapons contain a serial number, and the serial number of the Glock Detectives Standiford and Ory found under the house matched the serial number of the Glock that was stolen from him. He identified the NOPD Glock in question as the firearm that was stolen from his house.
Sycmentress Bell testified that at approximately 5:30 p.m. on July 9, 2012, she was on S. Liberty Street around St. Andrew Street talking to Mr. Watson and “Ben” a/k/a Daniel Watson “out of [her] truck.” As she was driving away, she saw a police car behind her. She also saw Mr. Watson crouched underneath a house, and Ben standing on the sidewalk. On cross-examination, she testified that they were not standing right by each other. She further testified that “[t]he police just jumped out, and he started running.” Although she continued to drive away, she *1172 called her sister, Eugene Watson’s mother, to inform her of the unfolding events.
Derrek Marigny testified that on the evening of July 9, 2012, he was standing on the porch of his rental property, located at 2239 St. Andrew Street. He |5saw Mr. Watson, whom he knew as “Gino,”[3] and another man standing on the sidewalk talking to another person in an SUV. He saw the SUV drive off, a police vehicle back up into the spot, and the officers jump out of the vehicle with their guns drawn. He saw one of the officers detain Mr. Watson. However, the other man, who was with Mr. Watson, disappeared behind an eight-foot-tall fence. He saw one of the officers walk toward the fence and appear to look over the fence for the man who disappeared. He then saw the other officer walk in the opposite direction behind a partition. He testified that the officer came out of the partition several seconds later saying: “Look what I got.” Mr. Marigny assumed it was a firearm. On cross-examination, Mr. Marigny testified that he never saw Mr. Watson leave the sidewalk to go under the house.
Rolanineor Warren testified that she lives at 1819 S. Liberty Street, the address of the house at which Mr. Watson was arrested. She testified that she was at home in the early evening of July 9, 2012, when Mr. Watson knocked on her door and woke her up. Before going to answer the door, she went to use the restroom. At that point, she heard a lot of foot noise. She then saw officers coming up her back steps. When she opened the door, she saw Mr. Watson on his knees on her porch with the officers. She was instructed by the officers to close the door.[4]

ERRORS PATENT

A review of the record for errors patent reveals one. The district court sentenced Mr. Watson as a multiple offender to serve ten years at hard labor as to | fiLa. R.S. 14:69.1 and twelve years at hard labor as to La. R.S. 14:95.1, with credit for time served, to run concurrently. The district court stated that both sentences were to be served at hard labor without benefit of probation, parole, or suspension of sentence. The district court also stated: “[ajdditionally, by law I must impose a $45.00 indigent defender fee. I can’t waive that.”
In this case, the record reflects that the district court only imposed the forty-five dollar indigent defender fee. The governing statutory provision, La. R.S. 14:95.1(B), mandates the imposition of a fine.[5] We thus remand this case for the imposition of the mandatory fine. See State v, McGee, 95-1863 (La.App. 4 Cir. 10/18/95), 663 So.2d 495, 496 (holding that we are bound by State v. Booth, 347 So.2d 241, 244 (La.1977), in which the Louisiana *1173 Supreme Court held that the fine imposed by La. R.S. 14:95.1 is mandatory, and the trial judge is without discretion to waive it).
*1172 Whoever is found guilty of violating the provisions of this Section shall be imprisoned at hard labor for not less than ten nor more than twenty years without the benefit of probation, parole, or suspension of sentence and be fined not less than one thousand dollars nor more than five thousand dollars. Notwithstanding the provisions of R.S. 14:27, whoever is found guilty of attempting to violate the provisions of this Section shall be imprisoned at hard labor for not more than seven and one-half years and fined not less than five hundred dollars nor more than two thousand five hundred dollars.

*1173
ASSIGNMENT OF ERROR NUMBER 1

Mr. Watson’s first assignment of error is that the evidence was insufficient to uphold his conviction. When assessing the sufficiency of evidence to support a conviction, this court must determine whether a rational fact finder could have found the defendant guilty beyond a reasonable doubt under Jackson v. Virginia, 443 U.S. 307, 309, 99 S.Ct. 2781, 2784, 61 L.Ed.2d 560 (1979). This court has 17delineated four guiding principles under the Jackson v. Virginia standard of review:
First, we consider all of the evidence that the jury considered. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Thus, in reviewing for sufficiency of evidence, we do not ignore evidence which was erroneously admitted at the trial or evidence which could have been excluded as, for example, inadmissible hearsay. See State v. Hearold, 603 So.2d 731, 734 (La.1992).
And, second, all of the evidence is viewed in the light most favorable to the prosecution. See State v. Fields, 12-0674, p. 6 (La.App. 4 Cir. 6/19/13), 120 So.3d 309, 315. Thus, in evaluating sufficiency of the evidence, we are not merely limited to the evidence itself, but may consider all reasonable inferences from the evidence which the fact-finder could have made. Jackson, 443 U.S. at 319, 99 S.Ct. 2781.
In similar fashion, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. See State v. Shapiro, 431 So.2d 372, 378 (La.1982). The elements must be proven such that every reasonable-hypothesis of innocence is excluded. La. R.S. 15:438.
And, third, in evaluating a defendant’s challenge to the sufficiency of evidence, we are restricted to those theories of defense actually put forward to the trier of fact. See State v. Juluke, 98-0341, pp. 4-5 (La.1/8/99), 725 So.2d 1291, 1293-1294 (per curiam). In other words, a defendant may not develop a new theory on appeal and demonstrate that the circumstantial evidence was insufficient to negate the new theory. Id.
And, fourth, in our review, we are highly deferential to the trier of fact. State v. Smith, 11-664, p. 4 (La.App. 4 Cir. 1/30/13), 108 So.3d 376, 381. Thus, we assume that the jury can accept as true the testimony alone of any witness, even a single witness. State v. Sanchell, 11-1672, p. 6 (La.App. 4 Cir. 10/31/12), 103 So.3d 677, 680. We will only tread on a jury’s presumed acceptance of a witness’ testimony when the testimony is implausible or clearly contrary to documentary evidence. See State v. Mussall, 523 So.2d 1305 (La.1988).
State v. Hamdan, 13-0113, pp. 9-10 (La.App. 4 Cir. 12/11/13), 131 So.3d 197, 203-04. Further, conflicting testimony as to factual matters is a question of weight Rof the evidence, not sufficiency. State v. Robinson, 10-0885, p. 7 (La.App. 4 Cir. 12/21/10), 54 So.3d 1208, 1213 (citing State v. Jones, 537 So.2d 1244,1249 (La.App. 4th Cir.1989)).
In order to convict a person of violating La. R.S. 14:95.1, the State must prove the following: 1) the defendant possessed the firearm, 2) the defendant had a prior conviction for an enumerated felony, 3) the defendant possessed the firearm within ten years of the prior conviction, and 4) the *1174 defendant had the general intent to commit the offense. State v. Clements, 12-1132, p. 5 (La.App. 4 Cir. 3/13/13), 112 So.3d 306, 310-11 (citing State v. Ussin, 08-1577, p. 2 (La.App. 4 Cir. 4/8/09), 10 So.3d 848, 849; State v. Husband, 437 So.2d 269, 271 (La.1983)). Further, under La. R.S. 14:69.1, the State must prove that the defendant intentionally possessed, procured, received, or concealed a firearm which was the subject of a robbery or theft, and that the defendant knew or should have known that the firearm was the subject of a robbery or theft.
Mr. Watson only challenges one aspect of these two convictions — that he had possession of the firearm. This court has addressed the element of “possession” under La. R.S. 14:95.1, stating:
Actual possession of a firearm is not necessary to prove the possession element of La. R.S. 14:95.1; constructive possession is sufficient. State v. Day, 410 So.2d 741, 743 (La.1982). A person is in constructive possession of a firearm if the firearm is subject to his dominion and control. State v. Johnson, 03-1228, p. 5 (La.4/14/04), 870 So.2d 995, 998. The “mere presence of a defendant in the area of the contraband or other evidence seized alone does not prove that he exercised dominion and control over the evidence and therefore had it in his constructive possession.” Johnson, OS-1228 at p. 6, 870 So.2d at 999. The State must prove that the defendant was aware that a firearm was in his presence and that the defendant had the general intent to possess the weapon. Johnson, 03-1228 at p. 5, 870 So.2d at 998. Guilty knowledge may be inferred from the circumstances and proved by direct or circumstantial evidence. Id. Whether the proof is sufficient to establish possession turns on the facts of each case. State |9u. Hams, 94-0970, pp. 3^t (La.12/8/94), 647 So.2d 337, 338-39; State v. Bell, 566 So.2d 959, 959-60 (La.1990).
Clements, 12-1132 at pp. 5-6, 112 So.3d at 311. Further, this court has held that constructive possession exists if a defendant has dominion and control over a weapon, even if it is only temporary in nature and even if the control is shared. State v. Major, 08-0861, p. 6 (La.App. 4 Cir. 12/10/08), 1 So.3d 715, 720.
Mr. Watson concedes that he is a convicted felon and that the gun presented at trial was stolen; however, he contends that the State failed to present sufficient evidence that he was in possession of the gun to support the two convictions. Mr. Watson contends that the testimony of Detectives Standiford and Ory conflicts with that of Ms. Bell and Mr. Marigny. Ms. Bell and Mr. Marigny testified that Mr. Watson was with another person, as opposed to alone, and that there was a vehicle on the street when the officers rounded the corner, instead of there being no vehicular traffic, as the detectives testified. Further, Mr. Watson contends that the detectives’ testimony conflicts as to why they were patrolling the area. One detective testified that the patrolling was routine, while the other testified that the patrolling was proactive. Still further, Mr. Watson contends that neither Ms. Bell nor Mr. Marigny saw Mr. Watson discard the gun.
Mr. Watson states that before his counsel could object, the detectives testified that they knew of Mr. Watson before they encountered him on July 9, 2012. Thus, Mr. Watson contends that the detectives portrayed Mr. Watson to the jury as someone familiar with the criminal justice system. Mr. Watson submits that these facts show a potential motive on the detectives’ part to falsify the events, or that the detectives failed to recall specifics, which the jury should have recognized.
*1175 linThe State counters that the evidence was sufficient to sustain a conviction because the detectives both witnessed Mr. Watson remove the weapon in an attempt to dispose of it; the footprints underneath the house, which the detectives photographed, were comparable to prints made by the shoes Mr. Watson was wearing; and Ms. Bell corroborated the detectives’ testimony that no other person was close to Mr. Watson as he crouched under the house. The State further counters that Mr. Watson’s assertion that the detectives fabricated their testimony to frame Mr. Watson is irrational. Finally, the State argues that the variation of the events from the witnesses were minor discrepancies that the jury could have concluded were irrelevant.
The detectives testified that they saw Mr. Watson put his hand in his waistband, remove the firearm, and toss it underneath the house. This testimony proves that Mr. Watson was in possession of the stolen firearm. The defense’s witness, Ms. Bell, corroborated the detectives’ testimony in one important respect. While Ms. Bell was one of the two defense witnesses who testified that there was another individual with Mr. Watson, she stated that this individual was on the sidewalk and was not close to Mr. Watson who was crouched under the house. Thus, all three witnesses agreed that Mr. Watson was the only person under the house. Further, the photographs of the footprints found under the house match prints of the shoes Mr. Watson was wearing. Because it is undisputed that the firearm was found under the house, this evidence supports the detectives’ testimony that Mr. Watson possessed the firearm and that he discarded it under the house.
The only witness who denied that Mr. Watson was crouched under the house was Mr. Marigny. However, it is the fact finder’s job, and not the appellate court’s, Into determine witness credibility and weigh the evidence. Further, conflicting testimony as to factual matters is a question of weight of the evidence, not sufficiency. Robinson, 10-0885 at p. 7, 54 So.3d at 1213.
Although there is conflicting testimony regarding whether Mr. Watson was standing alone or with another person at the time he was apprehended, Mr. Watson’s actions — crouching underneath the house and fleeing up the back stairs of the house when he saw the officers — demonstrates his awarenéss of the presence of the firearm and his general criminal intent to possess it. As previously noted, constructive possession exists if a defendant has dominion and control over a weapon, even if it is only temporary in nature and even if the control is shared. Major, 08-0861 at p. 6, 1 So.3d at 720. Thus, Mr. Watson’s actions prove, at a minimum, that he had constructive possession of the firearm.
In sum, the evidence was sufficient to allow a rational juror to find beyond a reasonable doubt that Mr. Watson had, at a minimum, constructive possession of the firearm. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER 2

In his second assignment of error, Mr. Watson contends that the district court erred in failing to rule on his pro se motion to quash. In his pro se motion to quash, Mr. Watson requested that the district court quash the bill of information because La. R.S. 14:69.1 and La. R.S. 14:95.1 violate the Louisiana and the United States Constitutions. His motion, however, failed to specify how prosecution for these offenses violated his constitutional rights. The district court failed to rule on his motion.
Mr. Watson concedes that his trial counsel made no objection to the district court’s failure to rule on his motion. Nonetheless, *1176 he contends that he is not barred |12from appealing this issue since he has a claim for ineffective assistance of counsel. He asserts that if his counsel had timely objected, he may not have been convicted of being a felon in possession of a stolen firearm. In support, he cites the 2012 amendment to Article I, Section 11 of the Louisiana Constitution, which provides “[t]he right of each citizen to keep and bear arms is fundamental and shall not be infringed. Any restriction of this right shall be subject to strict scrutiny.”
In further support of his position, Mr. Watson cites State v. Draughted 13-0914 (La.12/10/18), 130 So.3d 855. In Draughter the Louisiana Supreme Court reversed the district court’s granting of a motion to quash based upon the unconstitutionality of La. R.S. 14:95.1 following the 2012 amendment of Article I, Section 11. Id., 13-0914 at p. 1, 130 So.3d at 857-58. The Louisiana Supreme Court held that the statute was not unconstitutional as applied to a defendant who was a convicted felon still under state supervision. Id. Mr. Watson contends, however, that the Louisiana Supreme Court did not preclude the possibility of declaring the statute unconstitutional as applied to a defendant who was not similarly situated.[6]
The State counters that the motion to quash is not properly before this court because Mr. Watson failed to properly object to the district court’s failure to rule on it. The State submits that Mr. Watson thus failed to preserve the issue for appeal. The State further counters that the record does not contain sufficient h¡¡evidence for this court to address Mr. Watson’s ineffective assistance of counsel claim.
Although defense counsel’s failure to object to the district court’s failure to rule on his motion to quash precludes us from reviewing that issue on appeal, it does not preclude us from addressing Mr. Watson’s ineffective assistance of counsel claim. Generally, ineffective assistance of counsel claims are more properly raised through post-conviction relief in the district court where a full evidentiary hearing can be conducted. State v. Rubens, 10-1114, p. 58 (La.App. 4 Cir. 11/30/11), 83 So.3d 30, 66, writ denied, 12-0374 (La.5/25/12), 90 So.3d 410, and writ denied sub nom., State ex rel. Rubens v. State, 12-0399 (La.10/12/12), 99 So.3d 37 (citing State v. Howard, 98-0064, p. 15 (La.4/23/99), 751 So.2d 783, 802). However, this court has held that such claims can be addressed on appeal if the record is sufficient. Id. (citing State v. Bordes, 98-0086, p. 7 (La.App. 4 Cir. 6/16/99), 738 So.2d 143, 147). Here, we find that the record is sufficient to address this claim.
In reviewing Mr. Watson’s ineffective assistance of counsel claim, we must follow the two-part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Rubens, 10-1114 at p. 58, 83 So.3d at 66. (citing State v. Brooks, 94-2438, p. 6 (La.10/16/95), 661 So.2d 1333, 1337; and State v. Robinson, 98-1606, p. 10 (La.App. 4 Cir. 8/11/99), 744 So.2d 119, 126). Mr. Watson must prove both that: (1) counsel’s performance was deficient; and (2) he was prejudiced by the deficiency. Id. (citing Brooks, supra; State v. Jackson, 97-2220, p. 8 (La.App. 4 Cir. 5/12/99), 733 So.2d 736, 741). Under this test, Mr. Watson “must show that there is a reasonable probability that but for his *1177 counsel’s deficient performance the result of the proceeding would have been different.” Id., 10-1114 114at p. 58-59, 83 So.3d at 67 (citing Strickland, 466 U.S. at 693, 104 S.Ct. at 2068; and State v. Guy, 97-1387, p. 7 (La.App. 4 Cir. 5/19/99), 737 So.2d 231, 236).
Mr. Watson’s defense counsel should have objected to the district court’s failure to rule on Mr. Watson’s motion to quash. If his defense counsel had objected, the issue would have been preserved for appeal. Mr. Watson’s defense counsel’s performance thus was deficient. Nonetheless, Mr. Watson must also prove that he was prejudiced by his counsel’s deficiency. In his pro se motion to quash the bill of information, Mr. Watson simply alleged that La. R.S. 14:69.1 and La. R.S. 14:95.1 violated the Louisiana and United States Constitutions. He offered no legal argument, and he failed to reference any specific law in support of his motion. Considering his limited argument and complete lack of legal support, Mr. Watson has not shown that but for his counsel’s deficient performance, he would have prevailed on his motion. Thus, Mr. Watson has not shown that he has been prejudiced by his defense counsel’s failure to object at trial. Mr. Watson’s ineffective assistance of counsel claim lacks merit.

DECREE

For the foregoing reasons, the defendant’s conviction and sentence are affirmed and we remand this matter for further proceedings as addressed above.
AFFIRMED; REMANDED.

. On cross-examination, defense counsel asked Detective Standiford whether it was routine patrol, to which he affirmatively responded.

. At trial, photographs were introduced that depicted wooden slats underneath the house. However, Detective Standiford testified that these slats were not there at the time of Mr. Watson's arrest.

. However, Mr. Marigny testified that he did not know Mr. Watson well.

. During rebuttal, the State called Dan Hancock, the supervisor for the telecommunications system in the Orleans Parish Sheriff's Office, in order to introduce taped phone calls by Mr. Watson while he was imprisoned. However, Mr. Watson's counsel objected to the use of the tapes, and the district court recalled Mr. Hancock’s testimony because the State did not put the defense on notice of these tapes.

. La. R.S. 14:95.1(B) provides:

. While Mr. Watson’s arrest occurred before the 2012 amendment to Article I, Section 11, the Louisiana Supreme Court in Draughter held that the amendment applied retroactively to all cases pending on appeal or not yet final. Id., 13-0914 at p. 10, 130 So.3d at 863. We also note that the Louisiana Supreme Court has held La. R.S. 14:95.1 constitutional in circumstances like those of Mr. Watson. See State v. Eberhardt, 13-2306, 14-0209 (La.7/1/14), 145 So.3d 377.