MAX N. TOBIAS, JR., Judge.
|,On 23 December 2010, the defendant, Alvin Handy (“Handy”), and Michael Robinson (“Robinson”) were charged by bill of information with one count of simple burglary, a violation of La. R.S. 14:62.[1] The bill of information alleges that on UNo-vember 2010, Handy and Robinson committed “simple burglary of a structure located at 301 North Carrollton, belonging to Joan Berenson.” In February of 2011, Handy and Robinson appeared for arraignment and entered into pleas of not guilty.[2]
Subsequently, both Handy and Robinson filed pre-trial motions to suppress evidence, to suppress statement, to suppress identification, and for a preliminary hearing. On 17 June 2011, the trial court found probable cause to substantiate the charges and denied the motions to suppress.[3]
On 24 January 2012, the trial court found Robinson incompetent to stand trial and continued the matter without date. Handy proceeded to trial (by jury) on 13 *787 February 2012, after which the jury unanimously found him guilty as charged.
12Sentencing was scheduled for 21 May 2012. On the date of the sentencing hearing, Handy filed a motion for post-verdict judgment of acquittal, and the state filed a multiple offender bill charging Handy as a triple offender.[4] After the trial court denied Handy’s motion for post-verdict judgment of acquittal, he pled guilty to the triple offender bill and was sentenced to fifteen years at hard labor, to run concurrently with any other sentence, with credit for time served. On 12 June 2014, Handy filed a motion for appeal and designation of record.[5]

STATEMENT OF FACTS

The state called two witnesses to testify at trial: the investigating officer, Officer Christopher Johnson, and the victim, Joan Berenson (“Berenson”). The defense did not. call any witnesses.
Officer Christopher Johnson of the New Orleans Police Department Third District Task Force testified that on 11 November 2010, he was inside his parked vehicle when he observed a black male subject, identified in the record as Robinson, carry copper wiring from the back door of a former daiquiri shop on the corner of North Carrollton Avenue and Bienville Street.[6] Officer Johnson then |ssaw Robinson walk to a truck, tie some of the wire to it, and then strip the wire with a box cutter. He stated that he decided to investigate because the building was secured and boarded up, and no one should have been inside the property. Officer Johnson then approached Robinson, asked him to sit down, and began to question him. While Officer Johnson was speaking with Robinson, he also observed a second man, identified in open court as Handy, walking out of the rear door of the building, carrying iron tubing from the back of the toilet in one hand and some copper tubing in his other hand. He then stopped Handy and instructed him to sit next to Robinson. Officer Johnson testified that he asked the subjects if they were doing work in the property, and they replied that they were not.
Officer Johnson stated that he learned that the owner of the building was Beren-son from a passerby and attempted to contact her, but was unsuccessful at the time. He then took photographs at the scene and completed field interview cards on each of the subjects. Officer Johnson identified the field interview cards and the photographs at trial, which were later offered into evidence. The photographs included: a picture of the truck parked outside the building; a picture of the rear of the truck with the copper wire tied to it; a picture of the copper wire in its entirety; a *788 picture of the back door of the building that he observed Handy exit; a picture of the copper and iron tubing that was in Handy’s possession; a picture of the box cutter Robinson had used to strip the wire; and a photograph of Handy and his ID card.
Officer Johnson testified that he arrested Robinson on the scene because he was wanted in Jefferson Parish on a fugitive attachment. Handy, however, was allowed to leave the scene. Officer Johnson stated that because he was unable to | initially reach Berenson, he put the wiring and the tubing back inside the property and relocked the door.
Later, Berenson returned Officer Johnson’s call and informed him that nobody was supposed to be inside the building or had permission to take property from the building. Officer Johnson relocated to Berenson’s residence, and where she executed a theft affidavit, which was entered in evidence to complete the record. Thereafter, a warrant was issued for Handy’s arrest, and Robinson was re-booked for simple burglary. Officer Johnson testified that he was able to obtain the warrant due to the field interview cards and the photographs he had taken on the scene, which were introduced into evidence.
On cross-examination, Officer Johnson stated that when he returned the items taken by Handy and Robinson to the building, he observed a lot of debris therein, but no signs of construction work. He testified that on the day of the incident, the property was vacant and not open for business. Officer Johnson stated that he did not find any tools on Handy’s person, only the iron and copper pipes. He said that Berenson never accompanied him to the scene to view the items taken from the building nor identified the property allegedly taken from the building as hers; and he never showed Berenson any photographs he had taken on the scene. Officer Johnson stated the windows of the building were boarded up, but that the rear door was not. He admitted that he did not note any signs of forced entry into the building.
Berenson testified that she owns the property at 301 North Carrollton Avenue. The property consisted of an L-shaped shopping area and a separate building that used to be used as a daiquiri shop. She stated that following |sHurricane Katrina and on 11 November 2010, both the shopping area and the daiquiri shop had been boarded up to keep out vagrants.
Berenson did not recall the date, but stated that the police called her to inform her that two people had been caught taking items out of her property and inquired whether anyone had been authorized to enter the property. She stated that she advised the police that she did not give anyone permission to remove component parts of building materials from the property. She also testified that she never gave Handy or anyone else authority to work on her property.
On cross-examination, Berenson stated that the property was operational when it was leased. She said that prior to the robbery she went to the property every couple of weeks to meet with the maintenance man. The maintenance man mowed the grass and took away trash, but did not do anything inside the property. She testified that she never entered the daiquiri shop after Hurricane Katrina. She stated that she believed that the previous tenant brought in the equipment and fixtures, but was unsure if the lease said that in the event the tenant vacated whether the equipment and fixtures belonged to her or not.
Berenson said that subsequent to the robbery, the property was demolished. *789 She admitted that prior to demolition she did not perform an inventory of the materials that were inside the building. She testified that when she spoke with the police, she never identified photographs of the items allegedly taken from the property. The defense then offered and introduced three photographs depicting the subject property on North Carrollton Avenue.
On redirect, Berenson stated that the photographs presented by the defense did not portray the state of the property as it existed on 11 November 2010.

\ ^ERRORS PATENT

A review of the record reveals no errors patent.[7]

ASSIGNMENT OF ERROR NUMBER 1

In his sole assignment of error, Handy contends that there is insufficient evidence to support his conviction for simple burglary.
This court in State v. Haynes, 13-0323, pp. 7-8 (La.App. 4 Cir. 5/7/14), 144 So.3d 1083, 1087-1088, set out the well-settled standard for reviewing convictions for sufficiency of the evidence:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);[8] State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court is not permitted to consider just the evidence most favorable to the prosecution but must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the | ./fundamental protection of due process of law. Mussall, 523 So.2d at 1310. “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319, 1324 (La.1992).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from *790 which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 872 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987). If a rational trier of fact reasonably rejects the defendant’s hypothesis of innocence, that hypothesis falls; and, unless another one creates reasonable doubt, the defendant is guilty. State v. Captville, 448 So.2d 676 (La.1984).
“A factfinder’s credibility decision should not be disturbed unless it is clearly contrary to the evidence.” State v. McMillian, 2010-0812, p. 6 (La.App. 4 Cir. 5/18/11), 65 So.3d 801, 805 (citations omitted).
In the present case, Handy was charged with simple burglary. La. R.S. 14:62 defines simple burglary as “the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, or any cemetery, with the intent to commit a felony or any theft therein, other than as set forth in R.S. 14:60.”[9] Therefore, to convict a defendant of simple burglary, the state must prove beyond a reasonable doubt that the defendant entered the structure or vehicle without authorization and had the specific intent to commit a felony or theft therein. State v. Smith, 06-0318, p. 5 (La.App. 4 Cir. 11/21/06), 946 So.2d 218, 221 (citing State v. Ewens, 98-1096, p. 5 (La.App. 5 Cir. 3/30/99), 735 So.2d 89, 93). Theft is defined by La. R.S. 14:67(A) as follows:
Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
The requisite intent required by La. R.S. 14:62 and La. R.S. 14:67 is specific intent. State v. Brown, 12-0853, p. 3 (La.App. 4 Cir. 2/6/13), 109 So.3d 966, 968 (citing State v. Smith, 02-1018, p. 7 (La. App. 5 Cir. 3/11/03), 844 So.2d 119, 125). Specific criminal intent is “that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” La. R.S. 14:10(1). Specific intent is a state of mind that need not be proven as fact but may be inferred from circumstances and the actions of the defendant. Smith, 06-0318, p. 5, 946 So.2d at 221 (citing State v. Bailey, 00-1398, p. 3 (La.App. 5 Cir. 2/14/01), 782 So.2d 22, 24). Whether a criminal defendant possesses the requisite intent is for the trier of fact, and a review of the correctness of that determination is guided by the Jackson standard. Brown, 12-0853, p. 3, 109 So.3d at 968-969 (citing State v. Naquin, 10-414, p. 9 (La.App. 5 Cir. 2/15/11), 61 So.3d 67, 71).
Entry, in relation to La. R.S. 14:62, is accomplished whenever any part of the defendant’s person passes the line of the threshold; it is sufficient that any part of the person intrudes, even momentarily, into the structure. Brown, 12-0853, p. 3, *791 109 So.8d at 969 (citing State v. Conner, 08-0473, pp. 5-6 (La.App. 4 Cir. 10/1/08), 996 So.2d 564, 568).
|flHandy does not appear to contest that he made unauthorized entry into the North Carrollton property.[10] In fact, as noted later herein, he postures in his brief that numerous reasons exist to enter a vacant property without authority. Handy claims, however, that the state failed to prove that he committed or intended to commit a theft inside the building because (a) Berenson was unable to identify that the objects in his possession were taken from her property; (b) Berenson was not sure if the fixtures and equipment inside the building were owned by her or the previous tenant; and (c) Handy was not found to be in possession of any tools that would have enable him to remove the tubing/piping from the property.
However, to establish the crime of simple burglary, it is not required that an actual theft or a taking occur. State v. Jones, 97-2591, p. 8 (La.App. 4 Cir. 9/8/99), 744 So.2d 165, 169 (stating that “[t]he essence of burglary ... is an unauthorized entry with criminal intent; a taking is not required”). Additionally, the use of tools is not necessary to establish a simple burglary. See State v. Nelson, 08-0584, p. 4 (La.App. 4 Cir. 12/17/08), 3 So.3d 57, 60 (noting that “the use of tools is not a requirement of the crime of attempted simple burglary” and finding that the evidence was sufficient to support the jury’s conviction of the defendant for attempted simple burglary even though no tools were found on the defendant and no crime lab was called to the scene, where two witnessed identified the defendant as the perpetrator of the crime minutes after it took place); see also, State v. Runnels, 2012-167, p. 8 (La.App. 3 Cir. 11/7/12), 101 So.3d 1046, 1053 (there is no requirement that the state produce physical evidence in support of a | insimple burglary conviction). Thus, the fact that no tools were found on Handy or in his possession when he was apprehended, and the fact that Berenson could not state whether the iron and copper tubing found in Handy’s possession was removed from the daiquiri shop or owned by her under the terms of the lease agreement, is not fatal to his conviction provided that Handy had the intent to commit a theft or felony. Handy’s argument in this regard therefore lacks merit.
Furthermore, the testimony shows that the jury reasonably could have found from the circumstances that Handy had the specific intent to permanently deprive Beren-son of the iron and copper tubing he removed from the building. Officer Johnson testified that he observed Handy and his acquaintance, Robinson, walk out of the rear door of a vacant and boarded-up building carrying copper and iron tubing and copper wiring. Robinson was also seen stripping the copper wiring he removed from the property. Both Handy and Robinson confessed that they were not performing work in the property. Officer Johnson confirmed the absence of evidence that construction work was occurring in the building on the day of the incident. Berenson testified that she did not know Handy and did not authorize anyone to perform work, enter, or remove component parts or building materials from her property. Moreover, as the state noted in its brief, it is well-established that copper wire and other building materials are valuable and frequently stolen. See State v. *792 Brown, 08-0661, p. 4 (La.App. 4 Cir. 12/17/08), 3 So.3d 547, 550 (defendants were caught cutting copper pipe in a school damaged by Hurricane Katrina); State v. Nelson, 44,762, p. 9 (La.App. 2 Cir. 10/28/09), 25 So.3d 905, 912 (defendant removed copper items and plumbing pipes from the vacant home); State v. Wilson, 11-1166, unpub. (La.App. 4 Cir. 6/13/12), 2012 WL 4760654 (defendants found inside school cutting copper wire and pipe); State v. Dickerson, | , ¶ 13-0209, unpub. (La.App. 4 Cir. 4/2/14), 2014 WL 1329873 (defendant broke into residence to steal copper wiring). Based on the foregoing, a rational juror could infer from Handy’s actions and the surrounding circumstances that he entered the building without authority and had the specific intent to commit a theft inside the property.
Handy also contends that the state failed to present evidence that he intended to commit “any other felony” inside the building. He claims that by complying with Officer Johnson’s requests — placing the items down and sitting down when asked — and by not running away, his actions were inconsistent with someone who had the intent to commit a felony therein. Handy also lists various non-felonious purposes that one may enter a vacant building without consent of an owner, such as sleeping, or “needing a place to smoke marijuana” or “a place to urinate without exposing himself in public.”
However, the fact that a defendant may cooperate with an officer does not equate to innocence. Furthermore, the actions of Handy prior to being detained by Officer Johnson are consistent with criminal behavior. As noted above, Handy was observed exiting an unoccupied building that was boarded up for several years with copper/iron materials in his possession. Handy’s accomplice was likewise seen exiting the property with copper wire and subsequently observed stripping the wire. Further, no evidence is presented to reasonably show that Handy was in Beren-son’s property to do any of the alleged non-felonious acts ' that he enumerated. Moreover, absent from the record is anything that would explain why Handy would be carrying out building materials, like iron piping from a toilet or copper tubing, from a vacant property unless he was working in the property or committing a theft. However, Handy and Robinson admitted that they were not | ^.performing work in the building. Thus, no legitimate purpose for entering the property is shown to exist to support Handy’s hypothesis of innocence. It was therefore not irrational for the jury to conclude from the evidence that Handy had the intent to commit a theft or other felony at the time he entered Berenson’s property.
Considering that Handy did not have authority to enter the building; that he was observed removing iron and copper tubing from an unoccupied and boarded-up property; that such materials are valuable; and that he was not performing work in the building, we find sufficient evidence to support Handy’s conviction for simple burglary.

CONCLUSION

For the aforementioned reasons, we affirm the conviction and sentence of Alvin Handy.
AFFIRMED.

. The bill of information originally incorrectly named Handy as Alvin Hardy. However, on 13 February 2012, the state amended the bill of information to charge Alvin Handy.

. The parties appeared on two separate dates. Handy was arraigned on 15 February 2011, and Robinson was arraigned on 22 February 2011.

. Robinson filed a writ application on the trial court’s decision to deny the motion to suppress on 11 July 2011. On 20 July 2011, this court denied his application. State v. Robinson, 11-0936, unpub. (La.App. 4 Cir. 7/20/11).

.The state previously filed a multiple bill charging Handy as a quadruple offender on 13 April 2012. However, the state withdrew this bill and filed a new multiple offender bill charging him as only a third felony offender in exchange for Handy’s guilty plea in another matter, case number 507-187. The new multiple offender bill was based on the guilty verdict rendered for simple burglary in the present case, a guilty plea in September of 2006 for possession of stolen property in case number 462-246 and a guilty plea in January of 2005 for attempted possession of a firearm by a convicted felon in case number 449-805.

, At the trial Officer Johnson did not refer to the subject by name; however, at the preliminary hearing Officer Johnson identified the subject as Robinson.

. We note that the fifteen-year sentence imposed by the trial court pursuant to Handy's guilty plea to the multiple bill of information failed to specify that the sentence was "without benefit of probation or suspension of sentence” as required by La. R.S. 15:529.1(G). Nevertheless, when a criminal statute requires that all or portion of a sentence be served without the benefit of probation, parole, or suspension of sentence, or of any one of them, any combination thereof, La. R.S. 15:301.1 self-activates the correction and eliminates the need to remand for a ministerial correction. La. R.S. 15:301.1(A), (C); State v. Williams, 00-1725, pp. 1112, 14 (La. 11/28/01), 800 So.2d 790, 798-799, 801. Thus, no corrective action is necessary.

. In State v. Sparkman, 08-0472, pp. 6-7 (La. App. 4 Cir. 1/28/09), 5 So.3d 891, 895, we stated that the Jackson standard is legislatively embodied in La.C.Cr.P. art. 821 B, which provides that a "post-verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty.”

. La. R.S. 14:60 provides for the crime of aggravated burglary.

. Even if Handy alleged that the state did not show that he entered the building without authority, the trial transcript establishes that Handy was observed by Officer Johnson exiting the North Carrollton property; Berenson never gave Handy permission to enter or perform work on her property; and the property was boarded for several years.