PER CURIAM.
The state charged defendant by bill of information with possession of cocaine in violation of La.R.S. 40:967. After the trial court denied his motion to suppress the evidence, defendant entered a plea of guilty as charged, reserving his right to seek review of the trial court’s adverse ruling on the suppression issue. State v. Crosby, 338 So.2d 584 (La.1976). The trial *559 court sentenced him to two years imprisonment at hard labor, suspended, with two years of active probation. On appeal, the Fourth Circuit reversed defendant’s conviction and sentence on grounds that the trial court erred in denying the motion to suppress. State v. Lampton, 11-0775 (La.App. 4 Cir. 6/11/12), 95 So.3d 1199. We granted the state’s application to review the decision below and reverse for reasons that follow.
The testimony of New Orleans Police Officer Jimmy Peak at the hearing on the motion to suppress established the following facts. Peak was working with his partner, Officer Jonathan Sam, proactively patrolling the Iberville Housing Development maintained by the Housing Authority of New Orleans (HANO), when he and Sam observed a black male walking in the 1300 block of Bienville Street, which is located in the development. Officer Peak explained that the Iberville development is a high crime area known for drug trafficking and that nearly every building had a “no trespassing” sign. He also stated that he and Officer Sam were familiar with most of the Iberville residents through their cooperation with HANO’s own police officers, who “pretty much advise us of any individual that stays back there.” Because neither officer recognized the individual, they stopped him in the 1200 block of Bienville Street as he exited the development. Officer Peak patted defendant down and asked for identification. Defendant presented a Texas identification card reflecting he did not reside in the Iberville development. At that time, officers arrested him for trespassing, and during a search incidental to the arrest, observed a bulge in his right sock. A field analysis of the item recovered from the sock tested positive for crack cocaine.
On cross-examination, Peak confirmed that he had been assigned to the C.O.P.S. duty (Community Oriented Policing Squad) at the development for approximately one or two months at the time of defendant’s arrest and that he had been a New Orleans police officer for two years. He testified that he had spoken to a majority of the residents within that time, but could not recall the number of people living in the Iberville development. Peak explained that his partner, Officer Sam, had been assigned to the Iberville Housing Development longer than he had worked there. Officer Peak reiterated that he was unfamiliar with defendant when they made the stop. When asked why they conducted the stop, Peak elaborated that the block he was traveling on was known for drug trafficking, nearly all of the buildings had “no trespassing” signs, and neither he nor his partner was acquainted with defendant. Although there was some confusion on the number of pat-down searches, Office Peak clarified that he did an initial frisk of defendant “to make sure he didn’t have any weapons as we stopped him.... ” That pat down evidently did not produce any weapons or evidence, but the ensuing search incidental to defendant’s arrest for trespassing located the cocaine concealed in his sock. At the conclusion of the hearing, the trial court denied defendant’s motion to suppress evidence.
The court nevertheless permitted defendant to reopen the motion and at a second hearing on September 16, 2010, Officer Jonathan Sam testified that at the time of defendant’s arrest, he had been patrolling the Iberville development for eight or nine months and was familiar with the majority of residents. He testified that he and Peak stopped defendant because they suspected he was trespassing. Officer Sam offered a nearly identical version of the stop as his partner, emphasizing that it is common for non-residents to enter the Iberville Housing Development to buy narcotics. He also explained that every ten *560 ant’s lease includes a provision requiring residents to accompany their guests until they leave the area. The state did not, however, offer a copy of this lease into evidence.
On cross-examination, Officer Sam acknowledged that the area where they caught up to defendant and stopped him, the 1200 block of Bienville Street, was on the outskirts of the development, but noted that he and Officer Peak observed defendant coming out of the courtyard within the development immediately before the stop. He testified that defendant produced a valid identification when asked to do so, but the document showed an address not within the housing development. Sam confirmed that Peak conducted the initial pat down search of defendant for officer safety. After the arrest, officers noted that defendant kept moving his body so that they would not be able to check his right side. Defendant continued this motion even after Officer Peak asked him to stop moving. At that time, they conducted a full search incident to arrest, and discovered crack cocaine in defendant’s right sock. After considering the testimony of Officer Sam, the trial court again denied defendant’s motion to suppress the narcotics seized during the search.
In reversing the trial court’s ruling, the Fourth Circuit initially noted that the officers did not violate defendant’s Fourth Amendment rights by approaching him and asking for his identification. However, the appellate court, convinced that the state failed to produce any evidence of a “specific trespassing rule relating to the Iberville Housing Development, or any other housing development in New Orleans, that prohibited a person from walking through the development when that person is a nonresident of the development and not accompanied by a resident[,]” concluded that the officers lacked probable cause to arrest defendant for trespassing. Lampton, 11-0775 at 9, 95 So.2d at 1205. In its reasons for judgment, the appellate court relied heavily on its recent decision in State v. Mulder, 11-0424 (La.App. 4 Cir. 10/19/11), 76 So.3d 1241, writ denied, 11-2511 (La.12/1/11), 76 So.3d 1160, a factually similar case which held that police lacked reasonable suspicion to conduct an investigatory stop, based on an officer’s belief that defendant did not reside in Iberville Housing Development, because the state failed to present any evidence of an ordinance or statute outlawing a nonresident from entering a city housing development. Consequently, it determined that the illegal arrest invalidated the subsequent search of defendant and the seizure of cocaine from one of his socks. Id.
There is no dispute in the present case over the analytical framework for assessing the validity of the initial stop and subsequent arrest of defendant. While an arrest requires probable cause, an investigatory stop requires only the lesser standard of reasonable suspicion enunciated in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). La.C.Cr.P. art. 215.1. In making a brief investigatory stop the police still “‘must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.’ ” State v. Kalie, 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881 (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). The police must therefore “articulate something more than an ‘inchoate and un-particularized suspicion or “hunch.” ’ ” United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (quoting Terry, 392 U.S. at 27, 88 S.Ct. at 1883). This level of suspicion, however, need not rise to the probable cause required for a lawful arrest. The police need have only “‘some minimal level of *561 objective justification...Sokolow, 490 U.S. at 7, 109 S.Ct. at 1585 (quoting INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)). Police officers may nevertheless approach an individual, engage him in conversation about his presence in the area, and ask for his identification, without implicating either the Fourth Amendment or La. Const, art. I, § 5. State v. Lewis, 00-3136, p. 3 (La.4/26/02), 815 So.2d 818, 820(“[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen.... An officer’s request for identification does not turn the encounter into a forcible detention unless the request is accompanied by an unmistakable show of official authority indicating to the person that he or she is not free to leave.”) (internal quotation marks and citations omitted).
Moreover, as a general matter, “the determination of reasonable grounds for an investigatory stop, or probable cause for an arrest, does not rest on the officer’s subjective beliefs or attitudes but turns on a completely objective evaluation of all of [the] circumstances known to the officer at the time of his challenged action.” Kalie, 96-2650 at 1, 699 So.2d at 880 (citing Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); State v. Wilkens, 364 So.2d 934, 937 (La.1978)).
A fair reading of Officer Peak’s testimony at the suppression hearing indicates that immediately after stopping defendant, the officer frisked him, not out of any particularized concern for his safety and that of his partner, but as part of a general policy of frisking anyone the officers stop. In this regard, Officer Sam freely acknowledged that he routinely patted down individuals he stopped on the street “‘cause we don’t know who we’re dealing with ... some people just don’t like the police ... So we just do a pat down for officers’ safety for weapons.” The moment Officer Peak literally laid hands on defendant he decisively changed the nature of the encounter from consensual to a forcible detention for which he needed at least reasonable suspicion because at that point, no reasonable person would have felt free to leave and go about his business. California v. Hodari D., 499 U.S. 621, 626-27, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690 (1991) (a seizure for Fourth Amendment purposes requires either physical force or submission to the assertion of official authority.)
Even granting that a forcible detention occurred, however, the circumstances in this case gave rise to the officers’ reasonable suspicion that defendant was trespassing in the Iberville Housing Development. Although Officer Peak had been patrolling the community for only one or two months, Officer Sam had been on that same duty for approximately nine months and was acquainted with many if not most of the development’s residents. In addition, both officers testified to the plethora of “no trespassing” signs posted on virtually every building in the development. The officer thus had the requisite “minimal objective basis” to “maintain the status quo momentarily while obtaining more information,” the hallmark of an investigatory stop. State v. Fauria, 393 So.2d 688, 690 (La.1981).
Although there are factual similarities, we find that the lower court’s reliance on its decision in Mulder is misplaced because the officer in that case, acting upon a belief that defendant was a nonresident of the housing development, immediately ordered defendant to step to the hood of the patrol *562 unit and patted him down, which prompted him to drop a packet of heroin from his clenched hand. Therefore, given that the officer did not first ask for identification from the suspect, retrieval of the contraband was a direct result of a frisk without a particularized basis. In the present case, however, even assuming that Office Peak’s pat down of defendant also lacked a particularized basis, the officer’s request for identification was not induced by anything he discovered as a result of that cursory frisk but was the principal reason why the officers stopped defendant in the first place. Once defendant produced his identification, which established he did not reside in the Iberville Housing Development, the officers had probable cause to place him under arrest for trespassing and conduct a search incident to arrest.
The appellate court thus erroneously demanded a higher evidentiary burden of proof in relation to the trespassing statute than a hearing on a motion to suppress required because probable cause justifying an arrest and an ensuing incident search does not require proof beyond a reasonable doubt. State v. Brisban, 00-3437, p. 8 (La.2/26/02), 809 So.2d 923, 929 (“Probable cause deals with probabilities and recognizes that a degree of uncertainty may exist. Although mere suspicion cannot justify an arrest, the officer does not need sufficient proof to convict.”) (citations omitted). The housing development is owned by the City of New Orleans and operated by HANO, which placed the no trespassing signs on the property. The absence of evidence detailing the specific parameters of HANO’s authority to enforce the law of this state for the protection of its residents, which now includes the authority to maintain its own police force to “enforce laws, rules, and regulations to secure the protection of persons, properties, or interests relating to HANO,” R.S. 40:456.1(A) (2011 La. Acts 117), was not fatal to the state’s case at the suppression hearing. The trial court found credible the police testimony defendant was a non-resident who entered onto the property of another despite an array of “no trespassing signs,” under circumstances giving rise to a fair probability he had done so without express or implied authorization because he was walking alone through the housing development unaccompanied by any person who might have been a resident capable of authorizing him to be on the premises as an invited guest. See La.R.S. 14:63(B) (“No person shall enter upon immovable property owned by another without express, legal, or implied authorization.”); compare State v. Deary, 99-0627, p. 1 (La.1/28/00), 753 So.2d 200, 201 (noting “an almost implicit understanding and custom in this country that, in the absence of signs or warning, a residence may be approached and the occupants summoned to the door by knocking.”) (emphasis added) (internal quotation marks and citation omitted). We find no clear abuse of the trial court’s fact finding discretion in that regard. State v. Wells, 08-2262, pp. 4-5 (La.7/6/10), 45 So.3d 577, 580-81 (“When a trial court makes findings of fact based on the weight of the testimony and the credibility of the witnesses, a reviewing court owes those findings great deference, and may not overturn those findings unless there is no evidence to support those findings.... A trial court’s decision relative to the suppression of evidence is afforded great weight and will not be set aside unless there is an abuse of that discretion.”) (citations omitted). Moreover, even assuming that the suppression issue came down to HANO’s authority to exclude non-residents from its housing developments, a matter more properly reserved for trial of the case which defendant elected to forego by pleading guilty, the trial court was charged *563 with taking judicial notice of La.R.S. 40:510, which allows local housing authorities in this state to adopt rules excluding persons “who are not residents [or] their guests” from the premises “subject to an applicable state or local trespass law.” This authority is “cumulative of any other laws of this state relating to civil or criminal trespass, unauthorized entry upon property, or the exclusion or ejection of unauthorized persons from public or private property....” La.R.S. 40:511; cf. La. C.E. art. 202(A) (“A court, whether requested to do so or not, shall take judicial notice of the laws ... of every state....”).
Accordingly, the decision below is reversed, defendant’s conviction and sentence are reinstated, and this case is remanded to the district court for purposes of execution of sentence.