DANIEL L. DYSART, Judge.
11 After entering a guilty plea with a reservation of rights under State v. Crosby,[1] defendant, Roland Thomas, appeals the trial court’s denial of his motion to suppress evidence. For the reasons that follow, we affirm the conviction and remand to the trial court for the imposition of the mandatory fine required by La. R.S. 14:95.1(B).
PROCEDURAL HISTORY
Defendant was charged by bill of information with two counts of possession of a firearm by a convicted felon, one count of possession of alprazolam (a Schedule IV controlled dangerous substance under La. R.S. 40:964(B)), and one count of illegal carrying of a firearm.[2] At his arraignment defendant pled not guilty and, after motion hearings, the trial court found probable cause and denied the motion to suppress. Defendant then pled guilty to the possession of alprazolam and firearm charges and the State entered a nolle prosequi as to the possession illegal carrying of a firearm charge. Defendant was sentenced to ten years in |2prison for each of the felon in possession of a firearm count, and one year for the possession of alprazolam charge, the sentences to run concurrently. The trial court also imposed a $35 indigent defender fee.
Defendant now seeks review of the trial court’s denial of his motion to suppress evidence.
FACTUAL BACKGROUND
At the hearing on defendant’s motion to suppress, the State called one witness, New Orleans Police Officer James Sousa, of the Sixth District. According to Officer Sousa’s testimony, on August 26, 2011, he was on general patrol with five other officers in three marked police cars. They were on patrol “via task force” in an area which included a house located at 2723 First Street. He was “very much” familiar with that location as he had been involved in two separate narcotics investigations at that location five to six months before. In addition, less than a week before then, a firearm had been retrieved from the front porch of the house.
The officers observed four to five males standing in front of the house and they approached, intending to conduct a field interview. Officer Sousa explained that they “want to know who the people are there” because “[they] continue to get calls out there and [they] are continuing to do narcotic investigation over there.” Officer Sousa knew two people who lived at the house, but did not believe that defendant lived there or at least, did not recognize him.
|RThe officers asked the men to approach them and while several complied, defendant began walking towards the house and exhibited “furtive movements.” Because of the prior firearms investigation, “[the officers] began to get a little in fear of *1001 [their] own safety.” Officer Sousa described defendant’s movements:
[Defendant] began to put his hands directly down to his waist, motioning towards his pockets. Due to the fact that he was wearing a sweater at that time which concealed the waist, [Officer Sousa] was a little suspicious.[3]
Another officer, Sergeant Kalka, then approached defendant, asking him to keep his hands above his waist as he came forward. Sergeant Kalka “touched [defendant’s] right side” and felt a pistol grip. He retrieved the weapon, handed it to another officer and a second weapon was found and retrieved from around defendant’s waist.[4] Defendant was placed under arrest at that time for carrying a concealed weapon.
A search incidental to the arrest was conducted at which time two Xanax pills were discovered in a small box. Defendant’s name was run through the NCIC[5] which informed the officers that defendant was wanted on several different attachments. After defendant was informed of his Miranda rights, he commented that he carried the weapons not because he was a member of a gang, but because he feared for his safety because of other gangs.
On cross-examination, Officer Sousa indicated that, as the officers approached the men to conduct the interviews, they were concerned about their |4 safety. Officer Sousa asked the men to place their hands above their waists so that the officers could conduct a pat-down. The men did so, with the exception of defendant, who “immediately began to go down, not just one hand but two hands.” Officer Sousa explained their concern: “[i]f it were one hand it would be an issue of was he trying to adjust his clothing, but it was both hands ... and it was pretty rapid.”
Defendant was the only man arrested at that time. Officer Sousa admitted that, when the officers approached the men, no crime had been or was being committed.
STANDARD OF REVIEW
Trial courts are vested with great discretion when ruling on a motion to suppress. Accordingly, the ruling of a trial judge on a motion to suppress will not be disturbed absent an abuse of that discretion. State v. Norals, 10-0293, p. 3 (La.App. 4 Cir. 7/30/10), 44 So.3d 907, 909, writ denied, 10-1889 (La.8/16/10), 42 So.3d 382, citing, State v. Long, 03-2592, p. 5 (La.9/9/04), 884 So.2d 1176, 1179, cert. denied, 544 U.S. 977, 125 S.Ct. 1860, 161 L.Ed.2d 728 (2005).
DISCUSSION
In his sole assignment of error, defendant maintains that the trial court’s denial of his motion to suppress evidence violated the Fourth Amendment and the Louisiana Constitution, Article 1, Section 5.
Defendant’s argument arises from the U.S. Constitution’s protection of “[t]he right of the people to be secure in their persons, houses, papers, and effects, |sagainst unreasonable searches and seizures.” U.S. Const. Amend. IV. The Louisiana Constitution provides a similar protection so that “[e]very person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or inva *1002 sions of privacy.” La. Const, art. I § 5. Thus, as in this case, when evidence is seized without a warrant as required by the federal and state constitutions, the burden is on the state to show that a search is justified by some exception to the warrant requirement. State v. Anderson, 06-103, p. 2 (La.App. 4 Cir. 1/17/07), 949 So.2d 544, 546.
One such exception to a warrant-less search and seizure is a stop based on reasonable suspicion, codified in La. C.Cr.P. art. 215.1(A), which provides that “[a] law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.” See also: State v. Brown, 09-0722, p. 8 (La.App. 4 Cir. 2/10/10), 32 So.3d 939, 945.[6] Article 215.1 further provides that “[w]hen a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon.” La. C.Cr. P. art. 215.1(B). “Reasonable suspicion” to stop is something less than probable cause and is determined under the facts and circumstances of each case by whether the officer had sufficient facts within his knowledge to justify an ^infringement on the individual’s right to be free from governmental interference. Id.; see also: Norals, supra, p. 4, 44 So.3d at 910, citing State v. Sanders, 97-892, p. 11 (La.App. 5 Cir. 3/25/98), 717 So.2d 234, 240.
In this matter, the trial court concluded that reasonable suspicion existed for the officers to stop defendant. It orally articulated its reasons for denying the motion to suppress:
... I believe that the police officer has established a reasonable, articulable suspicion based on the movements of [defendant].
At the time when the police pulled up in full uniform with a marked police car [defendant] is the one who started reaching for his pockets and walking away from the police officers, which raised their suspicion and gave them the right, after having established that this is a known area for narcotics activity the fact that Officer Sousa was involved in the retrieval of the weapon from under the porch of which [defendant] was standing at the time less than a week before, I do find that he has satisfied his burden, as has the State and the Court will find probable cause for the arrest of [defendant] ... and I’ll deny the motion to suppress the statement ... [and] the evidence.
After reviewing the transcript from the hearing on the motion to suppress and our jurisprudence on this issue, we come to the conclusion that there was no abuse of discretion by the trial court. In so finding, we draw guidance from the recent Supreme Court decision of State v. Lampton, 12-1547 (La.4/5/13), 110 So.3d 557.
In Lampton, the Supreme Court reiterated the well-settled principle that, while an officer must have a “particularized and objective basis for suspecting the particular person stopped of criminal activity,” the “level of suspicion ... need not [7rise to the probable cause required for a lawful arrest, The police need have only ‘some minimal level of objective justification.’” Id., p. 3, 110 So.3d at 560-61. (Citations omitted).
*1003 At issue in Lampton, was the stop (and subsequent arrest) of a man who was walking in a housing development, marked with “no trespass” signs. At a hearing on a motion to suppress, one officer testified that the area was a high crime area known for drug trafficking. The officer was familiar “with most of the ... residents” and neither he nor his partner recognized the defendant. On this basis, alone, the officers stopped the defendant “as he exited the development,” patted him down and after determining that he did not reside at the development, arrested him. A search incident to his arrest yielded an item in his sock which tested positive for crack cocaine.
In Lampton, the Supreme court noted that the officer patted defendant down, “not out of any particularized concern for his safety and that of his partner, but as a general policy of frisking anyone the officers stopped.” Id. However, the court found that “the circumstances ... gave rise to the officers’ reasonable suspicion that defendant was trespassing,” noting that the officers “were acquainted with many if not most of the development’s residents.” Id., pp. 3 — 4, 110 So.3d 557. The court concluded:
... The officer thus had the requisite “minimal objective basis” to “maintain the status quo momentarily while obtaining more information,” the hallmark of an investigatory stop.
Id., p. 4.110 So.3d 557. See also, State v. Cure, 11-2238 (La.7/2/12), 93 So.3d 1268; State v. Surtain, 09-1835 (La.3/16/10), 31 So.3d 1037.
In the instant matter, we find that the officers had, at the least, a minimal objective basis for an investigatory stop of defendant, although we recognize Officer Sousa’s admission that, when he pulled up to the house, he had not seen the occurrence of a crime, nor received a report of the commission of a crime. Likewise, while he also admitted that, at that point in time, he did not have “reasonable suspicion that any of these people were currently committing a crime,” he was aware of previous criminal activity at that address. His suspicions were further provoked when the men were asked to come forward with their hands above their waists and defendant not only disobeyed by walking towards the house, but also moved his hands towards his waist. Defendant’s reaction to Officer Sousa’s request could easily have led the officers to fear for their safety and to become suspicious, when combined with the knowledge that a gun had been found at that house within the prior week and that the house had been under investigation for narcotics in the past. We agree with the trial court’s finding that Officer Sousa “established a reasonable, articulable suspicion based on [defendant’s] movements.” After our review of the facts and the trial court’s conclusions, we find no abuse of the trial court’s discretion in denying the defendant’s motion to suppress.
|nERRORS PATENT
Our review of the record reveals an error patent; namely, that the trial court erred in defendant’s sentence. La. R.S. 14:95.1(B) requires that the sentence for one convicted of the felony of possession of a firearm by a convicted felon be sentenced to imprisonment at hard labor “without the benefit of probation, parole, or suspension of sentence.” It further requires the imposition of a fine of “not less than one thousand dollars nor more than five thousand dollars.” Id. The trial court neglected to impose either of these components of defendant’s conviction.
The trial court’s failure to sentence defendant to hard labor without the benefit of probation, parole or suspension of sentence does not require remand. When *1004 a statute mandates the denial of benefits of probation, parole, or suspension of sentence, and a trial court fails to do so, remand is not necessary. State v. Brown, 09-0884, p. 11 (La.App. 4 Cir. 3/31/10), 36 So.3d 974, 982. Under La. R.S. 15:301.1(A), the denial of these benefits is deemed to be contained in the sentence, whether or not the trial court imposes them. Id.
However, the trial court’s failure to impose a mandatory fine in sentencing requires remand in order for the trial court to impose an appropriate fine. See: State v. Harris, 11-663, p. 4 (La.App. 4 Cir. 3/28/12), 88 So.3d 1223, citing State v. Williams, 03-0302 (La.App. 4 Cir. 10/6/03), 859 So.2d 751. We therefore remand this matter to the trial court for the imposition of a fine in accordance with La. R.S. 14:95.1(B).
1 ^CONCLUSION
For the foregoing reasons, the ruling of the trial court and defendant’s conviction are affirmed. The matter is remanded to the trial court for the imposition of a fine pursuant to La. R.S. 14:95.1(B).
AFFIRMED AND REMANDED

. 338 So.2d 584 (La.1976).

. These charges are violations of La. R.S. 14:95.1, La. R.S. 40:969(C) and La. R.S. 14:95(A), respectively.

. When showed a copy of his report, Officer Sousa corrected himself and agreed that defendant had been wearing a black t-shirt.

. Both weapons were determined to have been stolen.

.NCIC stands for “National Crime Information Center.”

. This Article is based on the United States Supreme Court decision of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and its progeny. See, e.g. State v. Mulder, 11-0424, p. 4 (La.App. 4 Cir. 10/19/11), 76 So.3d 1241, 1245.