ROLAND L. BELSOME, Judge.
hThe defendants, Morris Patín and Eugene Thomas, appeal their multiple convictions and sentences. Finding that the district court erred in part, we remand for the imposition of the mandatory fines relative to both of the defendants’ possession with the intent to distribute marijuana sentences on Count I, as well as Patin’s felon in possession of a firearm sentence on Count V. In all other respects, we affirm.

STATEMENT OF THE CASE

The defendants were jointly charged by bill of information[1] with possession with intent to distribute marijuana Count I; possession with intent to distribute cocaine (Count II); possession with intent to distribute heroin (Count III). Patín was charged separately with being a felon in possession of a firearm (Count V). The State amended the bill of information to jointly charge both defendants with possession with intent to distribute alprazolam (Count VI); and to charge Thomas separately with being a felon in possession of a firearm (Count VII).[2]
|2Thomas pled not guilty at arraignment on the original bill of information.[3] The *963 trial court granted the State’s Prieur[4] motion regarding the admission of prior crimes of Patín. Dantzler was severed pursuant to the State’s motion.[5]
A twelve-person jury found the defendants Patín and Thomas guilty as charged on all counts.[6] Subsequently, the trial court denied Thomas’s written motion for mistrial.[7] Patín also filed motions for post-verdict judgment of acquittal, and, alternatively, for a new trial. The record reflects that the trial court denied Patin’s motion for a new trial.[8]
After the expiration of the sentencing delay, the trial court sentenced Patín to five years at hard labor on Counts I, II, and VI; eight years at hard labor on Count III; and to fifteen years at hard labor on Count V, all sentences to run concurrently. Approximately one month later, the trial court adjudicated Patín a third-felony | ¡¡offender as to Count III; the court vacated the original sentence on Count III and re-sentenced him to thirty-seven years at hard labor.[9]
On the same day, the trial court denied Thomas’s motion for new trial; he announced his readiness for sentencing; and the trial court sentenced him to five years at hard labor on Counts I and II, with the first two years of the sentence on Count II without the benefits; seven years at hard labor on Count III, with the first five years being without benefits; and to three years at hard labor on Count VI; all sentences to run concurrently. The defendants’ appeals followed.

FACTS

After conducting a controlled purchase of heroin through a confidential informant, Detective Mike Dalferes of the New Orleans Police Department obtained a search warrant for the residence located at -2031 Dumaine Street, in New Orleans. On December 29, 2011, following a brief surveillance of the residence, the warrant was executed. When the narcotics officers knocked and announced their presence, they heard feet scrambling as if people were running to the back door, so they breached the front door to gain entry and detained the defendants. Patín and Thomas were found standing in the kitchen and Dantzler was sitting on the left end of the sofa.
A search of the residence yielded the following items: one loaded .40 caliber Glock handgun; twenty-three bags of crack cocaine; one large crack cocaine *964 rock; a bag containing twelve individual packages of heroin; an unspecified number of pieces of crack cocaine; twenty-two small bags of marijuana; two bags of inosi-tol, |4a cutting agent for cocaine and heroin; an orange pill bottle with forty-four white pills; two scales, and plastic sandwich bags. In addition to these items, the officers recovered one hundred twenty-seven dollars from Thomas; five hundred five dollars from Patin; one hundred dollars from Dantzler, and seven thousand dollars from a shoe box underneath an end table in the living room. The defendants were subsequently arrested.

ERRORS PATENT

There are various sentencing errors related to Patin. The first patent error involves both defendants, Thomas and Patin. PATIN
On Count I, Patin and Thomas were convicted of possession with intent to distribute marijuana, and were sentenced to five years at hard labor. The trial court failed to impose the mandatory fine, as required by La. R.S. 40:966(B)(3); therefore, the defendants’ sentences were illegally lenient. Accordingly, the case is remanded for imposition of appropriate fines relative to Patin and Thomas’s sentences on Count I. Cf., State v. Thomas, 12-852, p. 9 (La.App. 4 Cir. 5/29/13), 116 So.3d 999, 1004, writ denied, 13-1554 (La.1/27/14), 130 So.3d 957 (remand necessary for imposition of appropriate fine required by La. R.S. 14:95.1(13)).
On Count II, Patin was convicted of possession with intent to distribute cocaine, and sentenced to five years at hard labor. However, the trial court failed to specify that the first two years of the sentence be served without benefits, as required by La. R.S. 40:967(B)(4)(b). Likewise, the trial court failed to restrict the benefits of probation and suspension of sentence as it relates to Patin’s habitual offender sentence. Nevertheless, these provisions are deemed to be a part of the sentence. La. R.S. 15:301.1; State v. Handy, 14-1015, p. 6 (La.App. 4 Cir. 512/10/14), 156 So.3d 785, 789 n. 7 (When a criminal statute requires that all or a portion of a sentence be served without the benefit of probation, parole, or suspension of sentence, or of any one of those benefits or any combination thereof, La. R.S. 15:301.1 self-activates the correction and eliminates the need to remand for a ministerial correction.). Therefore, no corrective action is necessary.
On' Count V, Patin was convicted for being a felon in possession of a firearm. In addition to its failure to restrict benefits, the trial court also failed to impose the mandatory fine, pursuant to La. R.S. 14:95.1. Therefore, we also remand the matter for the imposition of an appropriate fine relative to Patin’s sentence on Count V. See Thomas, supra.

DISCUSSION

On appeal, Patin makes three claims related to sufficiency of the evidence, the admission of other crimes evidence, and an incomplete record; while Thomas only asserts one error regarding the denial of his motion for new trial. Since the defendant’s assignments of error are unrelated, we address them separately.

PATIN

First, Patin argues that the evidence was insufficient to support his convictions.[10] When reviewing the sufficiency of the evidence to support a conviction, this Court is controlled by the standard set forth by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which *965 dictates that to affirm a conviction “the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the [ficrime had been proved beyond a reasonable doubt.” State v. Captville, 448 So.2d 676, 678 (La.1984).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of “proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience.” State v. Shapiro, 431 So.2d 372, 378 (La.1982) (citation omitted). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate, test from Jackson, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198, 1201 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817, 821 (La.1987).
In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. State v. Robinson, 02-1869, p. 16 (La.4/14/04), 874 So.2d 66, 79 (citation omitted). Under the Jackson standard, the rational credibility determinations of the trier of fact are not to be second guessed by a reviewing court. State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291, 1293 (citation omitted). “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319, 1324 (La.1992) (citation omitted).
“A fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Where rational triers of fact could disagree as to the interpretation of the evidence, the [7rational trier’s- view of all evidence most favorable to the prosecution must be adopted on review. Only irrational decisions to convict by the trier of fact will be overturned.” State v. Winston, 11-1342, p. 8 (La.App. 4 Cir. 9/12/12), 100 So.3d 332, 337 (citations omitted).
In support of his argument that the evidence was insufficient, Patín claims that the State did not prove the element of possession relative to any of his five convictions.[11] Since possession is an element of each offense, the State had to prove beyond a reasonable doubt that Patín possessed the marijuana, cocaine, heroin, al-prazolam, and the firearm. See La. R.S. 40:966(A)(1); La. R.S. 14:967(A)(1); La. R.S. 40:969(0(2); and La. R.S. 14:95.1.
“To support a conviction for possession of a controlled dangerous substance, the State must initially prove that the defendant knowingly and intentionally possessed the drug.” State v. Keys, 12-1177, p. 5 (La.App. 4 Cir. 9/4/13), 125 So.3d 19, 27, writ denied, 13-2367 (La.4/4/14), 135 So.3d 637. None of the evidence was recovered from Patin’s person; therefore, the State had to prove that he constructively possessed the contraband — he exercised dominion and control over the items. See Keys, 12-1177, p. 5-6, 125 So.3d at 27 (the State need not prove actual possession of the narcotics; constructive possession is *966 sufficient; the State must prove that the defendant had dominion and control over the drugs); State v. Watson, 2013-1532, p. 8 (La.App. 4 Cir. 8/6/14), 147 So.3d 1169, 1173 (the State need not prove the convicted felon had actual possession of the firearm to prove possession, constructive possession is sufficient; the State must prove that the defendant |sexercised dominion and control over the firearm — that he was aware a firearm was in his presence and that he had the general intent to possess it.). Among the factors to be considered in determining whether the defendant exercised dominion and control over the item sufficient to constitute constructive possession are the defendant’s proximity to the item. Keys, 12-1177, p. 6, 125 So.3d at 27; State v. Clements, 12-1132, p. 7 (La.App. 4 Cir. 3/13/13), 112 So.3d 306, 311. The State must prove that the defendant was aware that the drugs and weapon were in his presence and that the defendant had the general intent to possess these items. State v. Johnson, 03-1228, p. 5 (La.4/14/04), 870 So.2d 995, 998. Guilty knowledge may be inferred from the circumstances and proved by direct or circumstantial evidence. Id. Whether the proof is sufficient to establish possession turns on the facts of each case. State v. Harris, 94-0970, pp. 3-4 (La.12/8/94), 647 So.2d 337, 338-39; State v. Bell, 566 So.2d 959, 959-60 (La.1990).

DRUG POSSESSION

In reference to the drug convictions, a known reliable confidential informant purchased approximately 0.2 grams heroin from Patín. Following the sale, Patín was followed and observed entering the residence located at 2031 Dumaine Street, unlocking the front door with a key. The next day, Patín was observed opening the front door at that residence, from inside, to admit a male who arrived on a motorcycle. That male remained in the residence for approximately three minutes before leaving. Detectives Dalferes and Ricky Jackson, of the New Orleans Police Department, testified that based on their years of experience, they believed the brief encounter was a narcotics transaction inside.
laAfter that male left, knowing that Pa-tín was inside, the officers executed the search warrant, finding the marijuana, heroin and cocaine in a drawer of a coffee table located in front of a sofa and the gun under the center cushion of that sofa, in the living area. Dantzler was sitting alone on the sofa at the left end of the sofa, while Patín and Thomas were in the kitchen area (which was really part-of the entire two-adjoining room open living area) when police entered). A brass key to Du-maine Street residence was found between Patin’s feet as he sat handcuffed on the sofa inside the residence during execution of the search warrant.[12]
In addition to drugs and the gun, seven thousand dollars in cash was found in a shoebox underneath an end table next to the sofa. Five hundred and five dollars in cash was recovered from Patín. A pill bottle containing forty-four tablets of al-prazolam, plastic sandwich bags and a digital scale were found in a drawer of a bed frame in the bedroom.
Also, after Patin’s arrest in Orleans Parish, Detective Mark Layrisson of the Jefferson Parish Sheriffs Office arrested him and received consent from his girlfriend, the lessee, to search her apartment located at 4000 Hessmer Avenue, Apartment 6, in Jefferson Parish. From that search, officers recovered heroin, packaged for distri *967 bution, oxycodone, and alprazolam, along with some identifying documents belonging to Patín.[13]
Though there was no physical evidence introduced to connect Patín to the Du-maine Street residence, Detective Jackson, who was qualified as an expert in narcotics investigations, testified that the drugs found at the Dumaine Street |1(lresidence were consistent with a “working stash.” He explained that dealers regularly stock a majority of their drugs at their residence or their girlfriend’s residence to avoid being robbed, and store a “working stash” in a “trap house,” which is minimally furnished and used solely to sell drugs.
Viewing all the evidence in a light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that Patín exercised dominion and control over the marijuana, cocaine, heroin, and alprazolam found in the Dumaine Street residence, especially when considering officers observed him conduct a hand-to hand transaction with a confidential informant, as well as, enter the Dumaine residence using a key during their surveillance.

FIREARM POSSESSION

Turning to the constructive possession of the handgun, a defendant’s dominion and control over a weapon constitutes constructive possession even if it is only temporary and even if the control is shared. State v. Fields, 12-0674 (La.App. 4 Cir. 6/19/13), 120 So.3d 309, 316, writ denied, 13-1692 (La.2/14/14), 132 So.3d 401, and cert. denied, — U.S. -, 135 S.Ct. 121, 190 L.Ed.2d 92 (2014) (citation omitted). See State v. Lewis, 535 So.2d 943, 950 (La.App. 2 Cir.1988) (presence of firearm in defendant’s home; statement by defendant that gun belonged to his wife; and discovery of shoulder holster in the master bedroom indicated defendant’s awareness, dominion and control over the firearm); and Clements, 12-1132 at 7, 112 So.3d at 311-312 (where this Court found the evidence of constructive possession was sufficient to support conviction of possession of a Infirearm by a convicted felon where the testimony of arresting officers established defendant’s close proximity to firearms, defendant was sole occupant of bathroom where firearms were found in plain view in open toilet tank, and defendant’s actions, namely, flushing toilet, moving away from area from which firearms were immediately recovered, and nervousness, demonstrated his awareness of presence of firearms and his general criminal intent to possess firearms).
The jurisprudence also reflects that the area underneath/in between sofa cushions, and generally around a sofa, is a common place for the concealment of firearms by persons engaged in criminal activity. See State v. Brown, 09-2456, p. 2 (La.5/11/10), 35 So.3d 1069, 1071 (police officer noticed butt of .40 caliber handgun protruding from sofa cushions, across from coffee table on top of which were multiple bags of marijuana, a scale, and plastic sandwich bags); State v. Lawrence, 08-0397, p. 3 (La.App. 4 Cir. 2/4/09), 5 So.3d 896, 899 (assault rifle discovered between sofa and wall in house trailer reeking of marijuana odor and containing marijuana cigarette butts, heroin, and cocaine).
In the present case, Dantzler was in the first room of the living area sitting on the left-hand side of the sofa when the police entered the residence. Defendants Patín and Thomas were standing in .the adjoining kitchen. After Dantzler stood up, Detective Burke recovered the loaded .40 cal *968 iber Glock handgun under the center cushion of the sofa. No contraband was found on Dantzler’s person, nor was any key to the Dumaine Street residence located on or nearby him.
There was no direct evidence linking the gun to defendant Patín; however, Detective Jackson testified that one would routinely find guns in a “trap house,” where drugs are stored. Significantly, both this Court and the Louisiana Supreme Court have long recognized a connection between illegal drug trafficking and |iaweapons. See State v. Fields, 13-1493, p. 12 (La.App. 4 Cir. 10/08/14), 151 So.3d 756, 765 (citation omitted)(“[A] recognized and close association exists between narcotics traffickers and weapons.”); State v. Fortier, 990244, p. 7 (La.App. 4 Cir. 1/26/00), 756 So.2d 455, 460 (quoting State v. Curtis, 96-1408, p. 9 (La.App. 4 Cir. 10/2/96), 681 So.2d 1287, 1292) (“We can take notice that drug traffickers and users have a violent lifestyle, which is exhibited by the criminal element who are generally armed due to the nature of their illicit business.”).
It has already been determined that the evidence was constitutionally sufficient to sustain defendant Patin’s conviction for possessing the contraband, not found on his person. Likewise, any rational trier of fact, viewing the evidence in a light most favorable to the prosecution, could have concluded beyond a reasonable that Patín, who was distributing narcotics, at a minimum, exercised shared dominion and control over the handgun discovered under the sofa cushion, near the primary drug stash. Under these circumstances, we find that the evidence was sufficient to convict Patín on all five charges.

OTHER CRIMES EVIDENCE

Next, Patín argues that that the trial court erred in admitting evidence of the seizure in Jefferson Parish of a large quantity of heroin, as well as alprazolam and oxycodone pills/tablets from his girlfriend’s Metairie apartment.
In its Prieur[14] notice, the State alleged that Patin’s girlfriend informed the police that she and defendant were the only persons with regular access to the apartment, and she denied that the drugs were hers. The State also represented in the notice of intent that defendant frequently stayed at the residence, something the State admitted that he denied, as well as that he denied the drugs were his. The Instate argued in the notice of intent that Patin’s course of conduct in the Jefferson Parish case assisted in establishing his intent to possess narcotics.
After a Prieur hearing, the trial court ruled that the evidence of the Jefferson Parish crimes (for which defendant had been convicted by the time of the trial in the present case) was admissible. Patín objected.
Generally, evidence of other crimes, wrongs, or acts committed by a defendant is inadmissible due to the “substantial risk of grave prejudice to the defendant.” State v. Greenberry, 14-0335, p. 15 (La.App. 4 Cir. 11/19/14), 154 So.3d 700, 709 (quoting Prieur). However, La. C.E. art. 404(B)(1) provides that, while such evidence is not admissible to prove the character of a person in order to show that he acted in conformity therewith,[15] it may be admissible for purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The other crimes evidence must tend to prove a material fact at issue or rebut a defense offered by the defendant (citation omitted). State v. Hardy, 14-1569, p. 1 (La.11/21/14), 154 *969 So.3d 537, 538. The State, being the proponent of the evidence, bears the burden of proving its admissibility. Id.
As with all other relevant evidence, other crimes evidence -may be excluded under La. C.E. art. 403 “if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.” The trial court “must balance the probative value of the other crimes evidence against its prejudicial effect before it can be admitted.” Hardy, 14-1569, p. 2, 154 So.3d at 538. The term “unfair prejudice” as used in La. C.E. art. 403, relative to a criminal defendant, refers to |uthe capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged, e.g., because the defendant committed the prior crime. State v. Henderson, 2012-2422, p. 2-3 (La.1/4/13), 107 So.3d 566, 568. “Probative evidence of prior misconduct will be excluded only when it is unduly and unfairly prejudicial.” Hardy, supra. Moreover, a trial court’s ruling on the admissibility of other crimes evidence will not be overturned absent an abuse of discretion. Keys, 12-1177, p. 14 (La.App. 4 Cir. 9/4/13), 125 So.3d 19, 31, writ denied, 13-2367 (La.4/4/14), 135 So.3d 637.
The defendant raises three issues involving the other crimes evidence: 1) the evidence recovered from the Jefferson Parish crime was not similar to the evidence recovered in the instant crime; 2) the evidence confused the jury; and 3) the evidence was more prejudicial than probative. In addition to having to prove that Patin constructively possessed the drugs and the firearm, the State had to prove that he had the specific intent to distribute the marijuana, cocaine, and heroin. Keys, supra.
First, Patin questions the relevancy of the other crimes evidence when arguing that the evidence recovered from the respective scenes were not consistent. In particular, he notes that the amounts of heroin seized from each location were considerably different. He also points out that oxycodone was only recovered from the scene in Jefferson Parish, while marijuana, cocaine, and a firearm were only recovered from the scene in Orleans Parish.
Of the items recovered from the Jefferson Parish apartment were a large bag containing numerous smaller bags of heroin, and two other bags containing heroin, totaling fifty-one grams. The ten grams of heroin recovered in New Orleans was |1Ralso found in one large bag, containing numerous smaller packages of heroin. Detective Jackson testified that 3.5 grams of heroin (an “eight-ball”), would produce from thirty to forty individual doses of heroin.
While the defendant was correct in noting these distinctions, he also acknowledges the similarities between the two cases. In brief, he conceded that heroin was recovered from both the Orleans and Jefferson Parish residences in amounts “indicative of intent to distribute” and that alprazolam was seized at both locations. In addition, Detective Jackson testified that narcotics dealers sometimes sell their drugs from a “trap house,” and store the majority of their drugs at another residence to avoid being robbed of their entire stock of drugs. He described the drugs found at the Orleans Parish residence as consistent with a “working stash.” Therefore, despite some differences between the two cases, Detective Jackson’s testimony implicates a connection between the two residences and Patin. Thus, the evidence is substantially relevant in establishing knowledge of possession, and element contested by Patin, and intent to distribute in this case.
*970 Particularly, Patin’s defense was that the narcotics and the gun did not belong to him; thus suggesting the charges against him were in error. Consequently, his Jefferson Parish crimes/convictions that occurred three weeks and a day after his arrest for the instant crimes were also relevant in establishing absence of mistake. Compare Keys, supra (remoteness in time is a factor to be considered when weighing probative value against prejudicial effect).
Next, Patín argues that the other crimes evidence confused the jury. He contends that the jury was “bombarded” with evidence from the Jefferson Parish case after already hearing lengthy testimony as to the present case. He also asserts that having Detective Jackson, who had participated in the execution of the search | ^ (¡warrant in the instant case, called as the State’s last witness as an expert in narcotics packaging and investigations, immediately after the Jefferson Parish evidence had been presented, confused the jury. In support of his claim that the jury was overwhelmed, Patín focuses on the fact that the jury deliberated for five hours before reaching a verdict as to all counts as to both defendants Patín and Thomas, and that none of the verdicts was unanimous.
The jury took five hours to reach its verdicts in the case. There is nothing in the record to indicate that the lengthy deliberation was due to the Jefferson Parish other crimes evidence. The case involved two defendants and nine counts between them. Moreover, the defendant has already noted distinguishing factors between the case in Jefferson Parish and this case.
Finally, as to the prejudicial effect of the admission of the other crimes evidence, Patín states that the jury was presented with evidence that he “had just been convicted of a crime where he was in possession of significantly greater amount of heroin, as well as a large amount of a different drug, Oxycontin.” However, the State did not present evidence as to any conviction in the Jefferson Parish case. It was counsel for Patín- who elicited from both Detective Dalferes and Jefferson Parish Detective Mark Layrisson the fact that he had been convicted in the Jefferson Parish case, had been sentenced, and was “serving time” for his eonviction(s) in the case.
The admission of probative evidence such as this is necessarily prejudicial to a defendant, as it tends to establish the defendant’s guilt. See State v. Fisher, 09-1187, p. 8 (La.App. 4 Cir. 5/18/10), 40 So.3d 1020, 1025. The underlying policy is not to prevent prejudice, since evidence of other crimes is always prejudicial, but to protect against unfair prejudice when the evidence is only marginally relevant to |17the determination of guilt of the charged crime. State v. Williams, 02-645, p. 16 (La.App. 5 Cir. 11/26/02), 833 So.2d 497, 507, writ denied, 02-3182 (La.4/25/03), 842 So.2d 398. See also, Fisher, supra. Since the probative value of the evidence outweighed the unfair prejudice caused, we cannot find that the trial court abused its discretion in admitting the evidence of other crimes.

INCOMPLETE RECORD

Finally, Patín claims that he was denied his right to full appellate review, because of an incomplete record. He contends that he is entitled to a reversal of his convictions and sentences, and a new trial, because the record is incomplete, given that the voir dire transcript does not provide a basis upon which it can be determined whether he made any challenges for cause that were denied.
A minute entry from trial reflects that the State, and each defendant exhaust *971 ed their respective peremptory challenges, and six prospective jurors were excused for cause, but it is silent concerning whether any party made a challenge for cause that was denied. Prejudice is presumed when a defendant’s challenge for cause is erroneously denied by a trial court and that defendant exhausts his peremptory challenges. State v. Odenbaugh, 10-0268, p. 24 (La.12/6/11), 82 So.3d 215, 287. In. State v. Pinion, 06-2346, p. 3, 10-11 (La.10/26/07), 968 So.2d 131, 132 and 136, the Louisiana Supreme Court reversed the defendant’s conviction for second-decree murder where many State and defense challenges “became lost in a haze of ‘inaudible’ responses,” with the court concluding:
In this particular instance, by operation of art. 795(B)(2) [requiring that peremptory challenges be exercised in side bar conferences out of the hearing of jurors], bench conferences are a material part of the proceedings for purposes of La. C.Cr.P. art. 843 and their omission from the present case, given the reasonable likelihood that counsel exhausted his peremptory challenges, the uncertainty with respect to how many cause challenges the defense made unsuccessfully, and the 11Rabsence of other contemporaneous records accounting for the selection process, e.g., adequate minutes or jury strike sheets, requires reversal of defendant’s conviction and sentence.
However, in the present case, this Court ordered a complete transcript of the in-chambers voir dire challenge conferences. Patín was notified of the receipt of this complete transcript of all peremptory strikes and challenges for cause made in chambers during voir dire and counsel ordered to file a supplemental brief. Patin’s appellate counsel subsequently notified this court that after reviewing the supplemental material she would not be filing a supplemental brief. This is because the complete in-ch'ambers voir dire challenge conference transcript reflects that the trial court granted all of Patin’s for cause challenges.[16] Therefore, defendant’s argument that the record is incomplete is incorrect.
For foregoing reasons, Patin’s convictions are affirmed.

THOMAS

In his sole assignment of error, Thomas argues that the trial court erred in denying his motion for new trial, which was based on La.C.Cr.P. art. 851(2) and (5).
La.C.Cr.P. art. 851 states:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
* * *
(2) The court’s ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;
[[Image here]]
11fl(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.
A ruling on a motion for new trial rests within the sound discretion of the trial court. State v. Coleman, 05-1617, p. 5 (La.6/29/07), 959 So.2d 465, 468.
In his written motion for new trial, Thomas first argued that there was a prej *972 udicial error, thus the trial court erred- in denying his motion for a mistrial pursuant to La.C.Cr.P. art. 851(2). The alleged error involved a statement made by the State during rebuttal argument that both house keys to 2031 Dumaine Street had been introduced at defendant Patin’s trial in Jefferson Parish. The trial court had expressly forbidden the State from mentioning this fact in argument as it was not in evidence.
A brass key to 2031 Dumaine Street was recovered by Detective Sislo at the feet of defendant Patín during the execution of the search warrant at the Dumaine St. residence; a silver key was recovered by Detective Andrew Roccaforte of the New Orleans Police Department. At trial, the State introduced both keys. The silver key had a red sticker. During closing arguments, Thomas correctly identified the silver key as having been introduced in the Jefferson Parish trial involving Patín. Thomas explained to the jury that red evidence stickers could be found on all of the evidence used in the Jefferson Parish trial that the State introduced at trial in the present case. Thomas emphasized this fact in her closing.[17]
In its rebuttal, the State explained:
| gpBack to Jefferson Parish again. There was a discussion about the keys [sic] about which key was entered in Jefferson Parish. The keys were entered together in Jefferson Parish.
At the hearing on the motion for a mistrial, the State conceded that it “argued a fact outside of evidence.” The trial court then questioned the State:
How do you know for sure that the outcome wouldn’t have been different had you not violated my specific order not to make the argument you made about the keys?
The prosecutor responded by stating that he could not say, but he argued that the jurisprudence was clear that the mere possibility of prejudice was insufficient to warrant a mistrial. The trial judge noted the length of time it took the jury to reach a verdict, stating that it was “clearly out there deliberating about Thomas much more so than Patín and I just don’t think it takes a genius to figure that out. I’m really struggling with this.”[18] The trial court took the matter under advisement and later denied the motion, issuing both a ruling in open court and a written ruling. The trial court concluded that the defense objection may have sufficiently interrupted the State’s argument so as to prevent the jury from hearing the full substance of it. The court stated that this, coupled with its instruction that argument by counsel is not evidence, would lead the court to trust that the jury carefully weighed the actual evidence in the case.
Argument of counsel is governed by C.Cr.P. art. 774, which provides:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
UiTtie state’s rebuttal shall be confined 'to answering the argument of the defendant.
The mistrial article applicable in the instant matter, La.C.Cr.P. art. 775, provides six specific circumstances in which a mis *973 trial “may” be ordered. None of those six specific circumstances is present in the instant case. However, the article also provides that:
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
“As a general matter, mistrial is a drastic remedy which should only be declared upon a clear showing of prejudice by the defendant.” State v. Smith, 430 So.2d 31, 44 (La.1983) (expressly referring to the broad, general mistrial ground of La.C.Cr.P. art. 775). The mere possibility of prejudice is not enough to warrant a mistrial. State v. Leonard, 05-1382, p. 11 (La.6/16/06), 932 So.2d 660, 667. A trial court has broad discretion in determining whether conduct has been so prejudicial as to deprive a defendant of a fair trial. Id. Even where a prosecutor exceeds the bounds of proper argument, an appellate court will not reverse a conviction “unless ‘thoroughly convinced’ that the argument influenced the jury and contributed to the verdict.” Greenberry, 14-0335, p. 18, 154 So.3d at 710 (quoting State v. Casey, 99-23, p. 17 (La.1/26/00), 775 So.2d 1022, 1036). An appellate court reviewing a trial, court’s denial of a motion for a mistrial based upon improper argument by the State should accord credit to the good sense and fair-mindedness of the jury that heard the evidence when considering whether it is thoroughly convinced that such argument influenced the jury and contributed to the verdict. State v. Henry, 11-1137, p. 15 (La.App. 4 Cir. 10/24/12), 102 So.3d 1016, 1025.
| ^Thomas was found guilty as charged on all counts with which he ivas charged-possession with intent to distribute marijuana, cocaine and heroin, and possession of alprazolam. In addition to the marijuana, cocaine and heroin found in the drawer of the coffee table in the front room, and the alprazolam found in the drawer under the bed, a baggy of a “dealer amount” (according to Detective Jackson) heroin fell out of Thomas’s pants as he was being processed in Central Lockup after his arrest. However, there is no indication that Thomas was charged with possession with intent to distribute that heroin.[19] Nevertheless, Thomas’s possession of that heroin, a “dealer amount,” was evidence suggesting that he was part of the common scheme to possess and the narcotics found on Dumaine Street with intent to distribute them.
The other evidence against Thomas was his presence at the Dumaine Street residence when the officers battered in the front door and entered the residence; his presence inside the residence, shortly before the officers executed the warrant, when the male arriving on a motorcycle went inside, stayed for approximately three minutes, and left, suggesting a drug transaction between him and someone inside; Thomas’s presence in the kitchen area in the second room of the open two-room living area, after officers heard the sound of quick footsteps or running after they knocked on the door and announced their presence; and, importantly, Thomas’s possession of a key to the front door of the residence, which was found by Detective Roccaforte. Also, it can be noted that Thomas stated in his closing argument that the key allegedly recovered from him was on a key ring attached to a | gjibrary *974 card, suggesting his exercise of a degree of possession (of the key) beyond a mere casual loose key in one’s pocket.[20]
Since the brass key recovered from Pa-tin did not contain a red sticker, raising the issue as to the whether the key was actually recovered from Thomas was an important factor in his defense strategy and closing argument. Thus, but for the State’s action in violating the trial court’s order and making the comment that both keys had been introduced in Patin’s Jefferson Parish trial — a fact as to which the State had failed to introduce any evidence at trial — the jury would have gone into deliberations wondering why the key allegedly recovered from Thomas apparently had been introduced in Patin’s Jefferson Parish trial and used to convict Patín in that case was now being used to prove that Thomas constructively possessed the drugs found in the Dumaine Street residence.
However, the issue for the jury as to the silver key on the ring with the library card, with the red sticker on it, was whether it was seized from defendant Thomas. The jury heard Detective Dalferes and Sislo both testify that Detective Roccaforte removed the key from Thomas. Further, the jury heard Detective Sislo affirmatively testify that when he approached Patín, as he was sitting on the sofa after the officers searched the residence, he observed a gold key on the floor between his feet. The fact that one brass and one silver key, both to the front door lock at 2031 Dumaine Street, were recovered inside the residence that day was not seriously contested by either defendant, and both of them were introduced as evidence during trial in the instant case.
1 ^Considering all the facts, circumstances, and evidence, it cannot be said that the trial court abused its discretion in (1) concluding that the rebuttal comment by the State was not so prejudicial that it deprived Thomas of a fair trial; or (2) in consequently denying his motion for mistrial. Consequently, despite the State’s error, we cannot say that one would be thoroughly convinced that the prosecutor’s comment influenced the jury and contributed to the verdict. Thus, the trial court did not abuse its discretion failing to grant Thomas’s motion for new trial insofar as it was based on the denial of his motion for mistrial.
The other ground asserted in Thomas’s motion for new trial, under La.C.Cr.P. art. 851(5), was that that the ends of justice would best be served by granting him a new trial, although he may not be entitled to one as a matter of strict legal right. In evaluating a new trial motion brought under La.C.Cr.P. art. 851(B)(5), the duty of the trial court is to put itself in the position of a juror. State v. McKinnies, 13-1412, p. 10 (La.10/15/14), 2014 WL 5393037, at *6. In reviewing a trial court’s ruling for abuse of its great discretion in granting or denying a motion for new trial pursuant to La.C.Cr.P. art. 851(5), an appellate court must keep two precepts in mind: (1) under this ground a trial court is vested with almost unlimited discretion, and its ruling should not be disturbed absent a palpable abuse of that discretion; and (2) La.C.Cr.P. 851 expressly states that “[t]he motion for new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case, the motion shall be denied, no matter upon what allegations it is grounded.” Fields, 13-1493, p. 33-34, 151 So.3d at 777 (citing State v. Guillory, 10-1231, pp. 4-5 (La.10/8/10), 45 So.3d 612, 615.
*975 12SIn arguing that the ends-of-justice require a new trial, defendant asserts that the State’s comment that the two keys to 2031 Dumaine Street had both been introduced in Patin’s Jefferson Parish trial operated to deny him his right to confront and cross-examine any witness who would have testified to this fact, in violation of his rights under the Confrontation Clause of the Sixth Amendment to the U.S. Constitution.
The Sixth and Fourteenth Amendments to the United States Constitution and Article 1, § 16 of the Louisiana Constitution guarantee a criminal defendant the meaningful opportunity to present a complete defense. State v. Dressner, 08-1366, p. 15 (La.7/6/10), 45 So.3d 127, 137-38. Due process affords a defendant the right of full confrontation and cross-examination of the State’s witnesses. State v. Joyner, 111397, p. 36 (La.App. 4 Cir. 10/24/12), 107 So.3d 675, 695-96. It is difficult to imagine rights more inextricably linked to the concept of a fair trial. State v. Marcelin, 12-0645, p. 10 (La.App. 4 Cir. 5/22/13), 116 So.3d 928, 934, writ denied, 13-1485 (La.1/10/14), 130 So.3d 321, cert. denied, Marcelin v. Louisiana, — U.S. -, 134 S.Ct. 1951, 188 L.Ed.2d 971 (2014). Thomas cites no authority for the proposition that a prosecutor’s comment in rebuttal mentioning facts not in evidence violates a defendant’s right to confrontation. In any case, confrontation errors are subject to harmless error analysis. State v. Henderson, 2013-0526, p. 12 (La.App. 4 Cir. 2/19/14), 136 So.3d 223, 230-31. A confrontation error is harmless if it can be said beyond a reasonable doubt that the guilty verdict rendered in the case was surely unattributable to that error. State v. Scott, 12-1603, p. 16 (La.App. 4 Cir. 12/23/13), 131 So.3d 501, 510, writ denied, 14-0221 (La.8/25/14), 147 So.3d 701, and writ denied, State v. Williams, 14-0222 (La.8/25/14), 147 So.3d 701. Given the foregoing discussion concerning the key and the other | ^evidence used to convict Thomoas, we find that beyond a reasonable doubt the guilty verdict rendered in this case was surely unattributable to the prosecutor’s comment. Considering the totality of the circumstances, we cannot find that the trial court abused its almost unlimited discretion in concluding that the ends of justice did not require a new trial.
For these reasons, Thomas’s convictions are affirmed.

CONCLUSION

Accordingly, this matter is remanded for imposition of the mandatory fine relative to both defendants’ possession with the intent to distribute marijuana sentences on Count I, as well as Patin’s felon in possession of a firearm sentence on Count V. In all other respects, the defendants’ convictions and sentences are affirmed.
AFFIRMED IN PART; REMANDED IN PART.

. Kendrick J. Dantzler was also charged in the bill of information, jointly with Patín and Thomas in Counts I, II, III, and VI, and separately in Count IV with being a felon in possession of a firearm.

. Just before trial on the merits, the State entered a nolle prosequi as to Count VII.

. The record does not reflect that Patín entered a plea relative to the original bill of information. Likewise, neither defendant was arraigned on the amended bill of information. However, La.C.Cr.P. art. 555 states that "[a] failure to arraign the defendant or the fact that he did not plead, is waived if the defendant enters upon the trial without objecting thereto, and it shall be considered as if he had pleaded not guilty.” The record reflects that defendants Patín and Thomas both entered upon the trial without objecting to any failure to arraign them on any charge or to failing to permit them to enter a plea of not guilty to any charge. Thus, they both waived any error insofar as the trial court's failure to arraign them. State v. Gilmore, 11-1606, pp. *963 2-3 (La.App. 4 Cir. 2/8/13), 156 So.3d 46, 50, writ denied, 13-0627 (La.7/31/13), 119 So.3d 600.

. State v. Prieur, 277 So.2d 126 (La.1973).

. The trial court had previously granted defendants Thomas and Dantzler's re-urged motions to sever. However, the State sought supervisory review, and this Court reversed. See State v. Thomas, unpub., 13-925 (La.App. 4 Cir. 7/2/2013)(Lobrano, Tobias, Jenkins-dissenting).

. Before the case was submitted to the jury, the State amended Count VI to the charge of possession of alprazolam.

. Thomas initially made an oral motion for mistrial at trial after the jury retired to deliberate. However, the trial court requested a written motion and deferred its ruling.

. The record does not reflect that the trial court explicitly ruled on the motion for post-verdict judgment of acquittal. Notably, however, the motion for new trial denied by the trial court was made secondarily as an alternative to Patin's primary motion for post-verdict acquittal. In addition, Patín concedes in his appellate brief that the trial court denied both motions.

. The trial court did not rule on Patin’s previously filed motion to quash the multiple bill; however, by proceeding to the hearing without objecting to the court's failure to rule, he waived his motion. See State v. Dorsey, 07-67, p. 7 (La.App. 5 Cir. 5/29/07), 960 So.2d 1127, 1131.

. Though this is the defendant's second assignment of error, it should be addressed first. State v. Hearold, 603 So.2d 731, 734 (La.1992).

. Notably, Patín does not challenge the intent to distribute elements of the drug possession convictions for the marijuana, cocaine, and heroin. Likewise, he does not contest that he was a felon prohibited from possessing a firearm.

. Detective Jeff Sislo verified that the key he found opened the door to the residence by using it to lock and unlock the door.

. The officers recovered some miscellaneous paperwork, as well as a Transportation Worker Identification Card, in Patin’s name.

. State v. Prieur, 277 So.2d 126 (La.1973).

. Except as provided by La. C.E. arts. 412 and 412.2, relative to sexual offenses.

. Patín made two challenges for cause, one alone and one jointly with the State; both were granted.

. He also questioned two New Orleans Police Department detectives during the trial as to whether the red stickers were from Jefferson Parish. When questioned as to whether the red sticker was used in the Jefferson Parish trial, Detective Dalferes answered: "I guess.” Detective Jeff Sislo could not answer the question because he was not familiar with the process in Jefferson Parish.

. As already mentioned, the jury deliberated for five hours.

. The charge of possession with intent to distribute heroin lodged against Thomas was returned in a bill of information jointly charging him with that offense along with Patin and Dantzler, who were not connected to the heroin that allegedly fell from Thomas's pants in Central Lockup.

. One of the detectives also described that silver key as being on a key ring with an attached- library scan number tag or card.